**Donna J. KIRBY, Appellant,**

v.

**ALASKA TREATMENT CENTER, Appellee.**

No. S–3915.

Supreme Court of Alaska.

Nov. 22, 1991.

Chancy Croft, Anchorage, for appellant.

Robert J. McLaughlin, Faulkner, Banfield, Doogan and Holmes, Seattle, for appellee.

Before RABINOWITZ, C.J., BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

This appeal arises from the superior court's ruling affirming a decision by the Alaska Workers' Compensation Board (the Board) that Donna Kirby is ineligible for vocational rehabilitation. The Board determined that although Kirby is permanently disabled, she is not entitled to vocational rehabilitation benefits because she may resume suitable gainful employment. We affirm.

## I. Factual and Procedural History

Donna Kirby was employed as an adaptive aquatic instructor at the Alaska Treatment Center (ATC). Her job involved teaching swimming and exercise to persons with physical, emotional, and developmental disabilities.[1] On April 1 and August 21, 1987, Kirby was exposed to excessive amounts of chlorine fumes at the job site. As a result of this exposure, she developed reactive airway disease and was told by her physician that she could no longer work in or near a chlorine-treated pool or in any environment in which chlorine was present.

As a consequence of her exposure to chlorine fumes, Kirby applied for disability and rehabilitation benefits. In January 1988, she began receiving temporary total disability (TTD) benefits of $213.61 per week. This figure was derived pursuant to AS 23.30.220(a)(2) by dividing Kirby's 1987 gross earnings of $15,585.16 by 52 and subtracting from that her payroll deductions.[2] To qualify for rehabilitation benefits, ATC's insurer requested that Kirby submit to a vocational evaluation. The evaluation was conducted by Northern Rehabilitative Services (NRS) which found that Kirby was qualified to work as a secretary or receptionist earning $7.50 an hour initially, $7.84 after one year, and $9.00 after three years. NRS concluded that Kirby did not require rehabilitation because she could approximate her 1987 earnings by working 40 hours per week in a clerical position.

Kirby thereafter moved for a rehabilitation hearing to challenge the NRS evaluation. At the hearing, Kirby sought approval of a rehabilitation plan which would allow her to return to college and finish a degree in social work.[3] The rehabilitation hearing officer rejected Kirby's plan and affirmed the NRS evaluation.

Kirby then appealed to the full Board. The Board found that if Kirby accepted a clerical position she would suffer approximately a 25% loss of earning capacity in the first year because she would be required to work 40 hours per week to earn the amount she was making at the time of her injury when working only 25 hours per week. The Board ruled that although this loss of earning capacity was tantamount to a permanent disability, Kirby was not entitled to rehabilitation benefits because the disability did not preclude her from returning to "suitable gainful employment." Kirby then appealed to the superior court which, in turn, affirmed the Board's decision. This appeal followed.

## II. Discussion

Kirby contests the Board's finding that she was returned to suitable gainful employment. First, she argues that the Board erred in failing to accord her the presumption of compensability. Second, she contends that post-injury employment at 75% of the pre-injury earnings is not suitable gainful employment, and, therefore, she should be eligible for vocational rehabilitation.

■ This case calls upon us to determine whether the superior court correctly ruled that Kirby is not entitled to rehabilitation benefits under AS 23.30.041. We apply the "reasonable basis" standard of review because the particularized experience and knowledge of the Board's administrative personnel is an important factor which goes into our determination. *Kelly v. Zamarello*, 486 P.2d 906, 916 (Alaska 1971). In applying this standard, we must decide whether the Board's findings lack either substantial support in the record or a reasonable basis in the law.[4] *Id.*

1. Kirby also worked on Saturdays for the Municipality of Anchorage as an aquatic director and instructor.

2. At the time of her injury, Kirby worked 25 hours per week at ATC at an hourly rate of $10.71. She earned between $10–15 per hour from her Saturday job with the Municipality of Anchorage.

3. The cost of Kirby's plan was $13,556.00 plus TTD benefits while she was in school.

4. Since the superior court in this case was acting as an intermediate appellate court we give no deference to its decision. *National Bank of Alaska v. State Dep't of Revenue*, 642 P.2d 811 (Alaska 1982).

## A. *Presumption of Compensability*

Kirby argues that the statutory presumption of compensability in AS 23.30.120 applies to her claim for vocational rehabilitation. AS 23.30.120 states the following presumption:

> **Presumptions.** (a) In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that (1) the claim comes within the provisions of this chapter....

When this case was heard in superior court, our rulings had only applied the presumption to claims which sought to establish a nexus between the injury and the work place. Our recent decisions, however, have given a broader reading to the presumption.[5] In *Municipality of Anchorage v. Carter*, 818 P.2d 661 (Alaska 1991), we extended the presumption of compensability to a claim for continuing care under AS 23.30.095(a) and found that "the text of AS 23.30.120(a) indicates that the presumption of compensability is applicable to any claim for compensation under the workers' compensation statute." *Id.* at 665. In *Wien Air v. Kramer*, 807 P.2d 471 (Alaska 1991), we applied the presumption to a claim for continuing temporary total disability.

 In keeping with these decisions, we find that the presumption applies as well to claims for vocational rehabilitation. When an injured employee raises the presumption, the burden shifts and the employer must produce substantial evidence to rebut the presumption. If the employer produces substantial evidence, the presumption drops out and "the employee must prove all the elements of his case by a preponderance of the evidence." *Veco, Inc. v. Wolfer*, 693 P.2d 865, 870 (Alaska 1985) (citations omitted). *See also Grainger v. Alaska Workers' Compensation Bd.*, 805 P.2d 976 (Alaska 1991). Thus, we presume that Kirby is eligible for vocational rehabilita-

tion benefits and place the burden upon ATC to produce substantial evidence to the contrary.

## B. *Eligibility for Rehabilitation Plan*

The Board correctly stated that for an injured person to be eligible for a rehabilitation plan two distinct events must occur: the employee must suffer from a permanent disability and that disability must preclude the employee from returning to suitable gainful employment. AS 23.30.041(c).

The Board first found that Kirby suffered a permanent disability because under the NRS evaluation she incurred approximately a 25% loss of earning capacity. We agree.

Next, the Board correctly stated the two statutes then in force defining suitable gainful employment. Former AS 23.30.041(i) states that an employee is restored to suitable gainful employment if

> the employee can return to (1) work at the same or similar occupation with the same employer or an employer in the same industry as the employer at the time of the injury; (2) an occupation using essentially the same skills as the job at the time of injury but in a different industry; (3) an occupation using different skills but using the employee's academic achievement level at the time of injury; (4) an occupation requiring an academic achievement level that is different from that attained at the time of injury. An employee shall be returned to suitable gainful employment in the order indicated in (1)–(4) of this subsection.

Former AS 23.30.265(28)[6] defines suitable gainful employment as

> employment that is reasonably attainable in light of an individual's age, education, previous occupation, and injury, and that offers an opportunity to restore the individual as soon as practical to a remunerative occupation and as nearly as possible

---

5. The applicability of the presumption to vocational rehabilitation is a legal question subject to *de novo* review by this court. *Municipality of Anchorage v. Carter*, 818 P.2d 661, 664 (Alaska, 1991).

6. Ch. 70, § 13, SLA 1983 repealed by ch. 79, § 44, SLA 1988.

to the individual's gross weekly earnings as determined at the time of injury.

In examining whether Kirby met these definitions, the Board considered several factors including her educational background, employment history, disability compensation, rehabilitation, testimony, and proposed rehabilitation plan. This information shows that Kirby is a high school graduate and has received a two year college associate degree with honors. Prior to working as an aquatics instructor, she worked as a secretary and receptionist earning $7.50 an hour. Kirby testified that she types 55 words per minute and the results from the General Aptitude Test Battery she took indicate that she otherwise has above average clerical skills. In addition, she has extensive office experience through working with her church and businesses and Kirby's physician approved of her performing general clerical skills. From this and other information, NRS determined that Kirby has sufficient transferable clerical skills to allow her to earn $7.50 an hour during the first year, $7.84 an hour after one year, and $9.00 an hour after three years.

The Board concluded that Kirby's disability did not preclude her from returning to "suitable gainful employment" as defined by former AS 23.30.265(28) and former AS 23.30.041(i)(3).

■■■ Kirby argues here that a 25% reduction in earning capacity which constitutes a permanent disability does not satisfy the requirement of former AS 23.30.-265(28) that the individual be restored "as nearly as possible to the individual's gross weekly earnings." We disagree. Should Kirby accept a clerical position, she will suffer approximately a 30% reduction in earning capacity the first year ($7.50 an hour versus $10.71), approximately 27% after one year ($7.84 an hour versus $10.71), and approximately 16% after three years ($9.00 an hour versus $10.71). We believe that the legislature intended the words "as nearly as possible" in former AS 23.30.-265(28) to include employment which restores an individual to within 16–30% of the individual's pre-injury earnings under the

time frame presented by the facts in this case. We note that this interpretation of former AS 23.30.265(28) is consistent with the effect of the amendments to AS 23.30.-041 enacted shortly after Kirby's injury. *See State v. Bundrant*, 546 P.2d 530, 545 (Alaska 1976) (statute in *pari materia* with a subsequent but approximately contemporaneous statute is appropriate source for construing legislative intent). Alaska Statute 23.30.265(28) has been repealed and now AS 23.30.041(p)(7) provides that remunerative employability is achieved by restoring an injured worker to at least 60% of the gross hourly wage at the time of injury. Our conclusion here also comports with our recent decision in *Olson v. AIC/Martin J.V.*, 818 P.2d 669, 674–75 (Alaska 1991) (employee had "suitable gainful employment" under AS 23.30.265(28) where he could earn between 61–64% of his pre-injury wages).

■■■ In our opinion, the Board properly found that Kirby was returned to "suitable gainful employment" as defined by former AS 23.30.265(28) because she is capable of performing clerical work in light of her education, experience and aptitude, because such work is available, and because accepting this work would restore her to a job which would pay her approximately the amount she was earning when she was injured. Similarly, Kirby meets the definition as set forth in AS 23.30.041(i)(3) because a clerical position is an occupation in which she may utilize her current academic achievement level.

We find that ATC produced substantial evidence which rebuts the presumption that Kirby is entitled to a rehabilitation plan. In this regard, we believe that there is both substantial support in the record and a reasonable basis in the law for the Board's ruling denying Kirby rehabilitation benefits.

AFFIRMED.

COMPTON, Justice, dissenting.

Former AS 23.30.041(d) (1984) provides:

(d) A full evaluation by a qualified rehabilitation professional shall include a determination whether a rehabilitation

plan is necessary and shall include the following specific determinations:

(1) whether *the rehabilitation plan* will enable the employee to return to suitable gainful employment;

(2) whether the employee can return to suitable gainful employment without *the rehabilitation plan;*

(3) the cost of *the rehabilitation plan,* including all costs to be incurred by the employer during *the rehabilitation plan,* and an estimate of whether the continuing benefits and compensation due to the employee under this chapter after the conclusion of *the rehabilitation plan* will be more or less than the benefits and compensation payable to the employee under this chapter if a rehabilitation plan is not implemented.

(Emphasis added).

The statute plainly requires that those determinations made pursuant to AS 23.30.-041(d)(1)–(3) consider an evaluation of a *rehabilitation plan* for the injured employee. The rehabilitation professional to whom Donna Kirby's case was assigned did not consider *any* rehabilitation plan for Ms. Kirby and therefore failed to make any of the determinations that are required by the statute. Rather, she reviewed Ms. Kirby's educational background and employment history, administered several vocational and general aptitude tests, tentatively determined that Ms. Kirby had "transferable skills" in the clerical/receptionist field, did a job survey of that field, and concluded that Ms. Kirby could be returned to suitable gainful employment without a rehabilitation plan.[1]

The Board did not make any of the section .041(d) determinations either, assuming that is its adopted role. It did *allude* to the cost of Ms. Kirby's tuition and fees necessary for her to obtain her bachelor's degree, and noted that she would be entitled to temporary disability benefits during completion of the plan she submitted, but made none of the determinations required by section .041(d)(3). The Board concluded that the rehabilitation professional was correct in her assessment that Ms. Kirby had "transferable skills" that would provide her with suitable gainful employment, and thus the plan was rejected.

In my view, the obvious failure of the rehabilitation professional and Board to make the statutorily required determinations is sufficient to justify this court remanding the case for a redetermination. We cannot determine whether there has been statutory compliance on this record, even were I convinced we know what the statute means. I am not.

Alaska Statute 23.30.265(28) (1984) provides:

"Suitable gainful employment" means employment that is reasonably attainable in light of an individual's age, education, previous occupation, and injury, and that offers an opportunity to restore the individual as soon as practical to a remunerative occupation as nearly as possible to the individual's gross weekly earnings as determined at the time of injury.

In turn, an employee is returned to suitable gainful employment "if the employee can return to ... (3) an occupation using different skills but using the employee's academic achievement level at the time of injury; or (4) an occupation requiring an academic achievement level that is different from that attained at the time of the injury...." AS 23.30.041(i) (1984). The employer, Alaska Treatment Center (ATC), argues that Ms. Kirby falls under (3), apparently because of "transferable skills," while Ms. Kirby argues that she should be considered under (4).

In her Preliminary Evaluation, the rehabilitation professional concludes that Ms. Kirby "has transferable skills in the clerical area...." The Full Evaluation states that "[i]n review of the claimant's work history, NRS has determined that Donna has transferable skills in two areas, nurs-

---

1. I assume that the reason none of the required determinations were made is that the rehabilitation plan, eventually rejected by the Alaska Workers' Compensation Board (Board), was never presented to the rehabilitation profession-al. Indeed, there is no evidence in the record that any plan was ever solicited from Ms. Kirby by the rehabilitation professional. Apparently it was left to her to come up with her own plan, without assistance from rehabilitation services.

ing assistant and general clerical/receptionist...." A nursing assistant position was not an option available to Ms. Kirby because of her chronic chlorine toxicity caused by her industrial accident.

Ms. Kirby was recently (1987) awarded an associates degree, with honors, from Anchorage Community College. Her course work emphasis was psychology. With the exception of a period of less than a year in 1980–1981, when Ms. Kirby worked for two different employers performing general secretarial, clerical, phone answering and pilot car driving duties, she has been employed as either a nurses aide (prior to 1980–1981) or as an aquatics instructor (prior to and after 1980–1981). From 1981 to 1985, she was an Aquatic Instructor, Associate Director and Acting Director at the YMCA aquatics program in Anchorage. From 1984 until her industrial accident, she was employed part time by the Municipality of Anchorage as an Adaptive Aquatics Director and Instructor. From August 1985 until the accident, she worked part time for ATC as an Adaptive Aquatics Instructor. Adaptive aquatics instructors work with adults and children who are disabled in some respect, such as the mentally retarded, emotionally disturbed, and autistic, the developmentally delayed, deaf, and blind, or those who are victims of cerebral palsy, multiple sclerosis or similar diseases. She has certificates in adaptive aquatics instruction, water safety instruction training (Ms. Kirby opined that there were only five such certified persons in Anchorage), first aid and CPR. She learned sign language to be able to communicate with her deaf students. She testified that one of the reasons she emphasized psychology at ACC was that "it ... helps you to better understand someone and be able to work with them, with their problems, and to come up with some solutions." But can she type and answer a phone?

Ms. Kirby can type and answer a phone. However, an occupation in the general clerical/receptionist field does not require the same academic achievement level as that required to perform the tasks required of and skills displayed by Ms. Kirby during most of her working life, and hence does not satisfy AS 23.30.041(i)(3) (1984). Furthermore, section .041 nowhere speaks to "transferable skills." Unless "transferable skills" mean "different skills" and are tied to the employee's "academic achievement level at the time of injury," whatever they are would seem to be irrelevant.

The rehabilitation professional determined that Ms. Kirby could start at the general clerical/receptionist level at $7.50 per hour, as did the Board. After one year she would advance to $7.84 per hour, and after three years to $9.00 per hour. There was evidence that she could start at $7.84 per hour. If we are to look at gross weekly earnings *at the time of the injury*, with no increase in her pre-injury occupation pay for merit, cost of living or inflation, after three years she will be earning $9.00 per hour, $1.71 per hour less than she was earning three years before.[2] If we average the three to four percent raise which Ms. Kirby testified she had received at ATC, she will earn $2.47 less per hour.

---

2. The court takes such an approach in accepting the Board's determination that Ms. Kirby's wage at time of injury of $10.71 per hour is the appropriate standard against which to measure her potential wage as a clerical/receptionist. This approach stands contrary to our approach in *Peck v. Alaska Aeronautical, Inc.*, 756 P.2d 282, 287 (Alaska 1988), where in considering a claim for permanent total disability benefits we held that the claimant had demonstrated a reliable, long-term earning capacity resulting in a significantly higher actual wage than that indicated by his prior annual wages. Even though dealing with a different claim, our explanation in that case is *equally* suited here:

> The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. [Her] disability reaches into the future, not the past; [her] loss as a result of injury must be thought of in terms of the impact of probable future earnings, perhaps for the rest of [her] life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage base. *Id.* at 286 (quoting 2 A. Larson, The Law of Workmen's Compensation, § 60.11(d), at 10–564 (1983) (citations omitted)).

This is roughly a 22% loss for Ms. Kirby. Unfortunately, we have no way of comparing what the difference would be if Ms. Kirby's plan were approved, since the Board chose the non-plan. Ms. Kirby testified that if her plan were approved, by the end of two years she would make as much as or more than she made at the time of her injury, thus suffering no future loss of earnings.

This court holds that Ms. Kirby is presumptively entitled to a rehabilitation plan. She submitted a plan on her own. I am of the opinion that she should have been assisted by rehabilitation services in developing her plan, and that the plan should have been analyzed by rehabilitation services in accordance with the statutory commands. The only evidence offered by ATC to rebut the plan was the report of the rehabilitation professional. This report was not in compliance with statutory directives as to its contents, nor were its defects cured by the Board. In addition, the rehabilitation professional, the Board and this court do not apply statutory criteria correctly to determine under what category of .041(i) Ms. Kirby should be placed to determine whether she is suitably employed. "Academic achievement level at the time of injury" does not seem so complex a subject as to elude determination.

I conclude that the employer has not rebutted the presumption this court applies to a claim for a rehabilitation plan. If the question is arguable, the case should be remanded for determination of whether the presumption has been rebutted and ultimate burden of proof met.[3]

---

**3.** It is ironic that in *Municipality of Anchorage v. Carter,* 818 P.2d 661 (Alaska, 1991), the court extended the presumption of compensability to an issue that was peripheral to the claim and virtually uncontestable without the presumption in any event. It remanded the case for additional consideration in light of the presumed entitlement. The same irony is to be found in *Adamson v. University of Alaska,* 819 P.2d 886 (Alaska, 1991), where the case is remanded for additional consideration in light of the peripheral and virtually uncontestable presumed entitlement. In both cases I viewed the remand as unsupportable. Here, where the question is arguable and the presumption goes to the dispositive issue of Ms. Kirby's claim, the court sees fit to conclude that the presumption was rebutted.