ALASKA PULP CORPORATION
and Alaska Timber Insurance
Exchange, Appellants,

v.

TRADING UNION, INC., and Alaska
National Insurance Co.,
Appellees.

No. S–5782.

Supreme Court of Alaska.

June 9, 1995.

Paul M. Hoffman, Robertson, Monagle &
Eastaugh, P.C., Juneau, for appellants.

T.G. Batchelor, Batchelor, Brinkman & Pearson, Juneau, for appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

MATTHEWS, Justice.

Jeffrey Anderson suffered a fractured and dislocated shoulder in a logging accident on November 7, 1989, while working for Alaska Pulp Corporation. After treatment and arthroscopic surgery, Anderson went to work in a grocery store owned by Trading Union, Inc., on February 26, 1990. On May 21, 1990, while working at the grocery store, Anderson again dislocated his shoulder while lifting a box weighing no more than twenty-five pounds. Anderson was unable to work after the incident. Additional surgery was performed in October of 1990. One of Anderson's physicians opined that his shoulder was stable and stationary as of January 21, 1991, giving it a permanent partial impairment rating of 5.5%.

The Workers' Compensation Board (Board) determined that Alaska Pulp was responsible for payment of all benefits under the Alaska Workers' Compensation Act, except for four weeks of temporary total disability following the May 21, 1990 incident for which Trading Union was found to be responsible. On appeal, the superior court affirmed the Board's determination that Alaska Pulp was generally responsible for payment of benefits to Anderson, but reversed the Board's determination that Trading Union was responsible for four weeks of temporary total disability.[1] Alaska Pulp appeals from the ruling of the superior court.

■ The first issue is whether the Board erred in requiring Alaska Pulp, rather than Trading Union, to pay the bulk of Anderson's benefits. In sum, Alaska Pulp argues that, since Anderson was able to work before the lifting incident and not afterwards, the lifting incident was necessarily a legal cause of his subsequent disability and therefore, under the last injurious exposure rule, the responsible cause of the disability. The applicable test, however, does not employ this *post hoc ergo propter hoc* reasoning. *See Olsen Logging Co. v. Lawson,* 856 P.2d 1155, 1159 (Alaska 1993) (describing last injurious exposure rule). Instead, the second injury must be a substantial factor in bringing about the disability, a test which is satisfied "only by a showing of both cause-in-fact and proximate cause: that the injury would not have happened 'but for' an act, omission or force and that reasonable persons would regard this act, omission or force as a cause and attach responsibility to it." *Fairbanks North Star Borough v. Rogers & Babler,* 747 P.2d 528, 532 (Alaska 1987). Whether legal cause exists is a question of fact to be determined by the Board. *Peek v. SKW/Clinton,* 855 P.2d 415, 418 (Alaska 1993). On appeal, the determination of the Board must be upheld if supported by substantial evidence on the whole record. *Marsh v. Alaska Workmen's Compensation Bd.,* 584 P.2d 1134, 1137 (Alaska 1978). The Board's determination that the injury suffered by Anderson while working for Trading Union was not a substantial factor in bringing about his long-term disability is supported by substantial evidence.[2]

■ The second issue is whether the superior court erred in reversing the Board's determination that Trading Union was responsible for four weeks of temporary total disability subsequent to the lifting incident.

1. The record does not show that Trading Union appealed this point to the superior court.

2. The evidence consists of (1) Anderson's testimony that his arm continued to dislocate after his initial shoulder injury and before the subsequent injury; (2) physical therapy records from the period after Anderson's first surgery and before the Trading Union injury which reveal reports of instability, pain and grinding sounds like those occurring before the first surgery and reports that the shoulder was dislocating; (3) Dr. Shields' opinion that the Trading Union lifting incident was not a significant exacerbation or aggravation of the shoulder injury but rather merely helped to reveal what was already wrong with Anderson's shoulder; (4) Dr. Shields' opinion that Anderson's post-lifting incident difficulties were attributable to the logging accident; (5) Dr. Coon's opinion that the logging accident was the cause of all of Anderson's shoulder problems; and (6) Dr. Matsen's opinion that the lifting incident was only a "manifestation" of the earlier injury.

This determination by the Board is also one of fact, reviewable under the substantial evidence on the whole record standard. The superior court erred on this point because such evidence does exist.[3]

For these reasons the judgment of the superior court is AFFIRMED IN PART and REVERSED IN PART and this case is REMANDED with directions to the superior court to affirm the decision of the Board.

---

3. The evidence consists of testimony by Dr. Shields that the lifting incident temporarily worsened Anderson's shoulder condition for an estimated period of four weeks.