Kevin KONECKY, Appellant,

v.

CAMCO WIRELINE, INC., and Continental Insurance Company, Appellees.

No. S–6419.

Supreme Court of Alaska.

July 26, 1996.

---

Joseph A. Kalamarides, Kalamarides & Associates, Anchorage, for Appellant.

Timothy A. McKeever and Keri Clark, Faulkner, Banfield, Doogan & Holmes, Anchorage, for Appellees.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS and EASTAUGH, JJ.

## OPINION

EASTAUGH, Justice.

### I. *INTRODUCTION*

The issue before us is whether Kevin Konecky is eligible for vocational reemployment benefits under AS 23.30.041(e). The Alaska Workers' Compensation Board (Board) ruled that he was not, and the superior court affirmed. We affirm the decision of the superior court.

Alaska Statute 23.30.041(e) provides for reemployment benefits when the injured employee's physical capacities are less than the physical demands of the employee's job as described in the United States Department of Labor's *Dictionary of Occupational Titles.* Although Konecky's job and like jobs in the labor market require greater physical capacity than that described in the dictionary, Konecky is physically capable of performing the demands of his job as described in the Department of Labor dictionary. The language of the statute consequently compels the result we reach.

### II. *FACTS AND PROCEEDINGS*

Konecky hurt his lower back in July 1988 while working as a "hoistman" for Camco Wireline, Inc. (Camco) at Prudhoe Bay.[1] He was taken to Providence Hospital in Anchorage, and was seen by Dr. George von Wichman and later by Dr. Robert Fu. As a result of these consultations, Konecky began a comprehensive back strengthening exercise program so that he could resume his job as a hoistman. Dr. Fu concluded that the program was successful, and released Konecky for "heavy to very heavy labor" in April 1989.[2]

---

1. Konecky describes his "hoistman" position as "having trucks ready for a job with ARCO or Standard and going out to that job and proceeding to rig up on the [production] well." Rigging up the well entails hooking tools to a long wire which runs down the well to obtain information regarding temperature, pressure, and fluids.

2. This rating of Konecky's physical capacity is based on the categories of physical demands of employment as provided in the United States Department of Labor's *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles (SCODDOT). SCODDOT* contains detailed occupational characteristics data, including training time, physical demands and en-

vironmental conditions of jobs as listed in the *Dictionary of Occupational Titles (DOT).* The *DOT* was compiled as a result of the need for a comprehensive body of standardized occupational information for purposes of job placement, employment counseling, occupational and career guidance, and labor market information services. U.S. Dep't of Labor, *Introduction* to *DOT* at xiii–xiv (4th ed.1977). The material in the current edition is based on more than 75,000 on-site job analyses conducted from 1965 to the mid–1970's in various industries. These analyses were conducted in an effort to ensure that the definitions contained in the *DOT* are not based on obsolescent industrial practices. *Id.*

Konecky returned to work in April 1989 when a hoistman position opened at Camco. In October he had another episode of pain at work. Further tests revealed that Konecky's work capacity had decreased to "medium."

Konecky applied to the Board for reemployment benefits as a result of his October 1989 injury.[3] In March 1992 the Board designated rehabilitation specialist Richard Stone to evaluate Konecky for rehabilitation eligibility. Stone evaluated Konecky and noted that his physical capacities, specifically his lifting ability, were of the "medium" category.[4] Stone determined that Konecky's physical job demands as a hoistman were of the "very heavy" level, requiring occasional lifting of 100 pounds and frequent lifting of fifty pounds. Konecky reported, and Camco confirmed, that the job required lifting in excess of 100 pounds. Stone also considered Konecky's past work history and concluded that Konecky could not return to the jobs he had held in the last ten years.[5] Stone therefore recommended that Konecky be found eligible for reemployment benefits. Based on this recommendation, the Reemployment Benefits Administrator Designee (RBA) determined that Konecky was eligible for reemployment benefits.

Camco appealed the RBA's decision to the Board.[6] In August 1992 the Board held that the RBA abused her discretion in finding Konecky eligible for reemployment benefits. The Board concluded that Stone and the RBA were required to use the description of the job demands provided in *SCODDOT* in accordance with AS 23.30.041(e), instead of considering the job's actual physical demands. The Board found that because *SCODDOT* lists the strength demands for a "hoist operator"[7] at the "medium work level," and because Konecky could perform work at this level, he was not eligible for reemployment benefits. The Board remanded the claim to determine if a "hoistman" position exists in the labor market.

On remand, Stone conducted a labor market survey to determine if the job of "hoistman" existed in the labor market as described by *SCODDOT* under the title "hoist operator." Stone reported the relevant labor market information, which showed that "medium-to-heavy" work is required for the "hoist operator" occupation. The RBA concluded that although Konecky was physically able to perform "medium" level work, "a review of Mr. Stone's survey shows that the occupation of Hoist Operator does not exist as medium work." Because the job did not exist in the labor market at the level of exertion described in *SCODDOT*, and because the actual physical demands of the hoistman position exceeded Konecky's capac-

---

*SCODDOT* lists five categories of work based on physical demands:

*Sedentary work:* involves "lifting [ten pounds] maximum and occasionally lifting and/or carrying such articles as dockets, ledgers, and small tools."

*Light work:* involves "lifting [twenty pounds] maximum with frequent lifting and/or carrying of objects weighing up to [ten pounds]."

*Medium work:* involves "lifting [fifty pounds] maximum with frequent lifting and/or carrying of objects weighing up to [twenty-five pounds]."

*Heavy work:* involves "lifting [one hundred pounds] maximum with frequent lifting and/or carrying of objects weighing up to [fifty pounds]."

*Very heavy work:* involves "lifting objects in excess of [one hundred pounds] with frequent lifting and/or carrying of objects weighing [fifty pounds] or more."

U.S. Dep't of Labor, *SCODDOT* 465 (1981).

3. This appeal raises no issues about Konecky's eligibility for any workers' compensation benefits other than vocational reemployment benefits.

4. Stone's recommendation characterized Dr. Fu's prediction of Konecky's physical capacities as being "Medium–Heavy—Exerting up to 75 lbs of force occ[asionally], up to 35 lbs freq[uently] and up to 15 lbs constantly."

5. In the ten years before Konecky's first injury, Konecky worked at a number of other jobs. Stone found that although some of the past jobs fell within Konecky's physical capabilities, they did not meet remunerative employability criteria.

6. References to "Camco" include Camco's compensation insurer when appropriate.

7. *SCODDOT* does not list a "hoistman" position, but does list a "hoist operator" position. The Board's decision uses both terms throughout. The Board implicitly found that these terms describe the same position, and Konecky does not argue on appeal that he was a "hoistman" (the title Camco gave his position) and not a "hoist operator."

ities as predicted by his physician, the RBA again determined that Konecky was eligible for reemployment benefits.

Camco again appealed to the Board. The Board reversed the RBA in June 1993. It found that because *SCODDOT* considers a hoist operator job to require medium physical capacity and because Konecky could perform at that level, he was ineligible under AS 23.30.041(e) for reemployment benefits. The superior court affirmed. This appeal followed.

## III. *DISCUSSION*

In determining that Konecky was not eligible for reemployment benefits, the Board strictly applied the job description of hoist operator pursuant to AS 23.30.041(e) and stated:

> Unfortunately, this is another case in which the law requires us to use the SCODDOT's job description, and it does not match reality. We find Employee's actual job at the time of injury and other jobs in the labor market as a hoist operator require lifting over 50 pounds. They are clearly not medium capacity jobs as defined in the SCODDOT.
>
> Given the mandate in the law that the RBA must rely upon the SCODDOT for the job's physical demands, we conclude we have no choice but to find the RBA did not use the description in the SCODDOT of the physical demands of a hoist operator's job in finding Employee eligible. Instead, the RBA considered the actual job demands of the job Employee held at the time of injury. Then, in a creative twist in the interpretation of the statute, the RBA determined the hoist operator's job as described in SCODDOT did not exist in the labor market.
>
> We find this determination is contrary to the law. We find the law was misapplied

and a mistake was clearly made. Considering the medical evidence, we find Employee is able to perform jobs requiring medium physical capacities. Based on the SCODDOT, we find Employee's job at the time of the injury as a hoist operator is a job which demands medium physical capacities. Although Employee no longer has the physical capacity to perform the actual duties of his job at the time of injury, we must ignore that fact and consider a theoretical description of the physical demands of his job. Based on Stone's testimony and the Department of Labor statistics, we find hoist operator jobs exist in the labor market.

> Accordingly, for the reasons stated above, we conclude the RBA abused his discretion. We reverse his determination and find Employee is not eligible for reemployment benefits.

(Citations omitted.)

Konecky argues that the *SCODDOT* definition of "hoist operator" is antiquated and that strictly applying AS 23.30.041(e) is consequently unjust and illogical. Konecky urges us to allow the RBA to depart from the *SCODDOT* description when the facts require such action.

Camco argues that the Board correctly applied AS 23.30.041(e). Camco reasons that strict application of the *SCODDOT* definitions is consistent with the legislature's purpose in enacting the 1988 amendments to the Alaska Workers' Compensation Act.

Resolution of whether the Board erred in determining that Konecky was not eligible turns on the meaning of AS 23.30.041(e) and on the Board's fact finding that hoist operator jobs exist in the labor market. "[T]his court reviews the Board's reading of AS 23.30 under the independent judgment standard."[8] *Rydwell v. Anchor-*

---

8.  Camco argues that the court should apply the reasonable basis standard of review. This standard of review is generally appropriate when "the agency is making law by creating standards to be used in evaluating the case before it and future cases," and "when a case requires resolution of policy questions which lie within the agency's area of expertise and are inseparable from the facts underlying the agency's decision."

*Earth Resources Co. of Alaska v. State, Dep't of Revenue,* 665 P.2d 960, 964 (Alaska 1983) (citing *Galt v. Stanton,* 591 P.2d 960, 965–66 (Alaska 1979) (Rabinowitz, J., concurring)). However, when the "issue to be resolved turns on statutory interpretation rather than formulation of fundamental policy involving particularized expertise of administrative personnel, ... we shall independently consider the meaning of statute."

*age Sch. Dist.*, 864 P.2d 526, 528 (Alaska 1993) (citations omitted). Because the superior court acted as an intermediate court of appeal, we give no deference to its decision. *Id.* We review the Board's fact findings under the substantial evidence standard. *Alaska Pulp Corp. v. Trading Union, Inc.*, 896 P.2d 235, 236 (Alaska 1995); *Yahara v. Construction & Rigging, Inc.*, 851 P.2d 69, 72 (Alaska 1993); *Morrison v. Afognak Logging, Inc.*, 768 P.2d 1139, 1141 (Alaska 1989).

Alaska Statute 23.30.041(e) authorizes the Board to grant reemployment benefits when an employee's physician predicts that the employee will have physical capacities

> less than the physical demands of the employee's job *as described in the United States Department of Labor's "Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles"* for (1) the employee's job at the time of injury; or
>
> (2) other jobs that exist in the labor market that the employee has held . . . within 10 years before the injury. . . .

AS 23.30.041(e) (emphasis added).

█ In interpreting a statute, we "look to 'the language of the statute construed in light of the purpose of its enactment.'" *Yahara*, 851 P.2d at 72 (quoting *J & L Diversified Enter. v. Municipality of Anchorage*, 736 P.2d 349, 351 (Alaska 1987)). If the language of the statute is unambiguous and expresses the intent of the legislature, and if no ambiguity is revealed by the legislative history, we will not modify or extend a statute by judicial construction. *Id.* (citing *Alaska Pub. Employees Ass'n v. City of Fairbanks*, 753 P.2d 725, 727 (Alaska 1988)). However, if there is some ambiguity, we apply a sliding scale approach in interpreting the statute. *Alaska Pub. Employees Ass'n v. City of Fairbanks*, 753 P.2d at 727. Under this approach, "'the plainer the language, the

more convincing contrary legislative history must be.'" *State v. Alex*, 646 P.2d 203, 208–09 n. 4 (Alaska 1982) (quoting *United States v. United States Steel Corp.*, 482 F.2d 439, 444 (7th Cir.), *cert. denied*, 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973)). By using this approach, the court "endeavors to give effect to legislative intent, with due consideration for the meaning that the language of the statute conveys to others." *Rydwell*, 864 P.2d at 528 (citing *Forest v. Safeway Stores, Inc.*, 830 P.2d 778, 781 (Alaska 1992)).

█ The language of AS 23.30.041(e) is clear—the Board must compare the physical demands of a specific job as found in *SCODDOT* with the employee's physical capacities.[9] Employees are eligible for reemployment benefits only if their physical capacities are less than the physical demands as described in *SCODDOT*. *Rydwell*, 864 P.2d at 529.

The Board predicated its conclusion that Konecky was not eligible for reemployment benefits on the fact that *SCODDOT* defined the "hoist operator" position to require "medium" work. It implicitly made a fact finding that Konecky's position was that of hoist operator. Because it found Konecky was able to perform jobs requiring "medium" physical capacities, the Board determined that Konecky's physical capacities were not less than the *SCODDOT*-described job duties of the hoist operator position.

The Board's reasoning was compelled by the clear language of AS 23.30.041(e).

Konecky argues that this interpretation ignores the physical reality of his position. It was undisputed that his actual work demands exceeded the *SCODDOT* "medium" work category. Moreover, no other hoist operator positions in Alaska, Canada, or the lower 48 could be found that fit the "medium" category. Thus, Konecky's actual job at

*Hood v. State, Workmen's Compensation Bd.*, 574 P.2d 811, 813 (Alaska 1978). As the issue to be resolved in this case "turns on statutory interpretation," the use of the independent judgment standard is appropriate.

9. In *Yahara*, we held:
> Under the express language of AS 23.30.041(e), medical evidence of eligibility must satisfy three requirements. First, the evidence must take the form of a *prediction*. Second, the person making the prediction must be a *physician*. Third, *the prediction must compare the physical demands of the employee's job, as the U.S. Department of Labor describes them, with the employee's physical capacities.*

*Yahara*, 851 P.2d at 73 (final emphasis added).

Camco and hoist operator jobs elsewhere require more lifting and strength than the *SCODDOT* description contemplated.

Further, Konecky argues that the introduction to *SCODDOT* contains a disclaimer which states:

> The user should be cautious in interpreting the information in this publication. Occupational definitions described in the Dictionary of Occupational Titles (DOT), Fourth Edition are composite descriptions of occupations as they may typically occur and may not coincide with a specific job as actually performed in a particular establishment or in a given industry.
>
> Data for the Dictionary were collected and developed according to job analysis techniques established by the U.S. Employment Service and analyses conducted by occupational analysts in affiliated State Employment Service Occupational Analysis Field Centers. Data obtained through these studies were evaluated and job definitions were prepared, resulting in significant modifications in the occupational characteristics of most jobs. The information in the Dictionary reflects findings of the Employment Service from more than 75,-000 on-site analyses and extensive contacts with professional and trade associations relating to individual job situations. *An occupation found to have certain characteristics in job situations observed by the Employment Service does not necessarily preclude the same occupations from having different characteristics in other job situations.*

*SCODDOT* at v (1981) (emphasis added). Konecky argues that this disclaimer contemplates the very situation in which he finds himself—that the *SCODDOT* definition does not coincide with Konecky's job as actually performed. He argues that the Board erred in strictly applying the *SCODDOT* definition pursuant to AS 23.30.041(e)(1) because *SCODDOT* acknowledges the possibility that its definitions may not reflect the actual physical demands of a specific job.[10]

Konecky also relies on legislative history. The 1988 amendments to the Alaska Workers' Compensation Act regarding reemployment benefits "redefine[ ] an employee's eligibility for rehabilitation benefits as the inability to return to the job held at time of injury or other jobs held or trained for within 10 years prior to injury or following injury." House Judiciary Comm., Sectional Analysis, House Comm. Substitute for Comm. Substitute SB 322, 15th Legis., 2d Sess. § 10.4 (Comm. Print 1988) [hereinafter Sectional Analysis]. Thus, according to Konecky, strict application of the *SCODDOT* definition of "hoist operator" frustrates the legislature's intention of awarding benefits to employees who are unable to return to the job held at the time of injury. He also notes the overall legislative purpose of the 1988 amendments:

> It is the intent of the legislature that AS 23.30 be interpreted so as to ensure the quick, efficient, fair, and predictable delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to the provisions of AS 23.30.

Ch. 79, § 1, SLA 1988.

These circumstances, however, cannot overcome the clear language of the statute. The legislature's language is plain, and demands that reemployment benefit eligibility be determined by the *SCODDOT* job descriptions. The legislature neither expressed nor implied any exceptions. The statute's plain language was apparently intended to minimize or avoid prolonged and expensive disputes about eligibility for reemployment benefits by inflexibly relying on the Department of Labor's extensive occupational dictionary and job analyses. In doing so, the legislature may have been acting in accordance with its expressed intention to reduce costs to employers and reduce litigation. Ch. 79, § 1, SLA 1988, quoted above. *See also* Sectional Analysis § 10.5 ("The overall goal of these changes [to the workers' compensation rehabilitation system] is to promote a prompter, more efficient, more cost-effective,

---

10. Konecky also argues that AS 23.30.041(e) is ambiguous because it does not expressly address situations in which *SCODDOT* definitions do not reflect the actual physical demands of a job. This argument has no merit. As we noted previously, the statute is clear on its face.

successful, *and less litigated* rehabilitation system." (emphasis added)); *cf. Rydwell,* 864 P.2d at 530 (agreeing with party's argument that provisions requiring objective bases for claims are one means by which the legislature sought to reduce baseless claims and thus lower costs). The Board itself recognized this purpose in *Rydwell v. Anchorage School District,* AWCB No. 9003980 (May 17, 1991). In assessing the 1988 reenactment of AS 23.30.041, the Board found that some of the specific purposes of the reenactment were

> 1) to *create a less expensive system* with fewer employees participating in it; 2) to *reduce the use of vocational rehabilitation as a litigation tool;* 3) to encourage the use of vocational rehabilitation services for employees "most likely to benefit and who truly desire and need them"; [and] 4) to speed up the vocational rehabilitation process in the expectation of producing more successful outcomes.

*Id.* at 10 (emphasis added) (footnotes omitted).

If the court were to accept Konecky's argument, each time an injured worker applies for these benefits, questions would arise about the accuracy of the *SCODDOT* job descriptions. Employees could be expected to argue that *SCODDOT* underestimates the physical demands of the job, or that the job listed in *SCODDOT* is not available in the labor market. Employers could be expected to counter with arguments that *SCODDOT* exaggerates the physical demands of the job, or that actual demands of the job are less than those listed in *SCODDOT.* As a result, the predictability, objectivity, and cost reduction that the legislature intended would be greatly reduced. We rejected that result in *Rydwell. Rydwell,* 864 P.2d at 530. The legislature intended to redesign the Alaska Workers' Compensation Act to meet its stated goals. Nothing in the language cited

above from the Sectional Analysis or the legislative purpose establishes otherwise.

Thus, applying our sliding scale approach to statutory interpretation, Konecky's arguments are insufficient to overcome the plain language of AS 23.30.041(e). That language compels us to conclude that the Board did not err in finding Konecky ineligible for reemployment benefits. Although we are sympathetic to the reservations expressed by the Board and by the superior court, those reservations cannot allow us to ignore the clear statutory language absent any compelling indication the legislature intended some different result.

## IV. CONCLUSION

AFFIRMED.

MOORE, J., not participating.

RABINOWITZ, Justice, dissenting.

I dissent. Even if the court is correct that *SCODDOT* definitions must be applied strictly, this does not address the question of whether a particular job falls within a *SCODDOT* job title. As Konecky's job in particular, hoistman, evidently does not fall under any existing *SCODDOT* title, I would hold that his case is beyond the scope of *SCODDOT,* and that therefore *SCODDOT* should not be used in determining whether he is eligible for vocational re-employment benefits under AS 23.30.041(e). Also, I do not think that AS 23.30.041(e) requires this court to apply particular *SCODDOT* definitions strictly in every case.

In the case at bar, the *SCODDOT* description of the job is not the job as performed by Konecky. In fact, as Konecky and the court both point out, not only does the *SCODDOT* job description fail to describe Konecky's work, but "no other hoist operator positions in Alaska, Canada, or the lower 48 could be found that fit the 'medium' category." [1]

---

1. SCODDOT defines a hoist operator job to require *only medium physical capacity.* Because Konecky was able to perform at that level, he was held to be ineligible under AS 23.30.041(e) for re-employment benefits.

    In its decision the Board stated in part:
    Unfortunately, this is another case in which the law requires us to use the SCODDOT's job

description, and it does not match reality. We find Employee's actual job at the time of injury and other jobs in the labor market as a hoist operator require lifting over 50 pounds. They are clearly not medium capacity jobs as defined in the SCODDOT.
(Citations omitted).

A similarity in job titles, and a substantial overlap in duties, should not obscure the fact that Konecky's job is not the job described in *SCODDOT*. In fact, the job described in *SCODDOT* apparently does not exist. The fact that a job similar to Konecky's is described by *SCODDOT* does not mean that Konecky was performing that job.

Even the court's strict application of *SCODDOT* definitions should not require that a job which is not included in *SCODDOT* be forced to fit into a *SCODDOT* job title. Konecky's job involved substantially different demands from the job of "hoist operator," which is found in *SCODDOT*. In fact, no one's job fits the description of "hoist operator" as described in *SCODDOT*. Thus, under the circumstances of this case, I would hold that Konecky was not a "hoist operator" as defined by *SCODDOT*, that Konecky's job does not appear in *SCODDOT*, and that therefore *SCODDOT* should not have been used to measure the physical demands of his job. For this reason, I would reverse the decisions of the superior court and the Board.

Furthermore, even if Konecky is in fact a "hoist operator" as defined in *SCODDOT*, the proper application of *SCODDOT* allows for variability in the physical requirements of jobs. As the court notes, the *SCODDOT* itself contains a disclaimer which states: "Occupational definitions described in the [*SCODDOT*] ... may not coincide with a specific job as actually performed in a particular establishment or in a given industry." *SCODDOT* at v (1981). It also warns that "[a]n occupation found to have certain characteristics in job situations observed by the Employment Service does not necessarily preclude the same occupation from having different characteristics in other job situations." *Id.* Thus, *SCODDOT* itself recognizes that its definitions are not exhaustive descriptions of jobs as they actually exist.

Therefore, the requirement of AS 23.30.041(e) that the employee's physical capacities be compared to "the physical demands of the employee's job as described in the [*SCODDOT*] for ... the employee's job at the time of injury ..." must be understood to encompass *SCODDOT*'s own provision that the definitions should be read to include a degree of variability in the physical requirements of actual jobs. In effect, a truly strict application of *SCODDOT* definitions requires allowance for the variability of the physical demands of jobs.[2]

Konecky's job required greater physical capacity than the description of "hoist operator" in *SCODDOT*. This variation was anticipated by *SCODDOT*, and should be acknowledged. For this reason, too, I would reverse the decisions of the superior court and the Board.

---

**2.** Konecky's reliance on relevant legislative history is also of significance. As the majority notes, the 1988 amendments to the Alaska Workers' Compensation Act regarding re-employment benefits were intended to "redefine[ ] an employee's eligibility for rehabilitation benefits as the inability to return to the job held at time of injury or other jobs held or trained for within 10 years prior to injury or following injury." House Judiciary Comm. Substitute S.B. 322, 15th Leg., 2d Sess. § 10.4 (Comm. Print 1988). Given this history, I think there is considerable merit in Konecky's argument that strict application of the *SCODDOT* definition of "hoist operator" frustrates the legislature's intention of awarding benefits to employees who are unable to return to the job held at the time of injury.