Tom IRVINE, Appellant,

v.

GLACIER GENERAL CONSTRUCTION,
and Industrial Indemnity Company
of Alaska, Appellees.

No. S–8347.

Supreme Court of Alaska.

Aug. 6, 1999.

Rehearing Denied Sept. 1, 1999.

William J. Soule, Law Office of William J. Soule, Anchorage, for Appellant.

Mark L. Figura, Rose & Figura, Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

*OPINION*

BRYNER, Justice.

## I. *INTRODUCTION*

Thomas Irvine appeals the denial of his claim for reemployment benefits by the Alaska Workers' Compensation Board (Board), arguing that the Board erred in failing to credit the hearing testimony of his physician, Dr. Shirley Fraser, and in deferring instead to the findings of its Rehabilitation Benefits Administrator (RBA), who did not consider Dr. Fraser's opinion. We agree that under AS 23.30.041(e) the RBA had a duty to consider the views of Irvine's designated physician and that, absent such consideration, the Board erred in deferring to the RBA's findings. We nevertheless conclude that this error is harmless, because the record conclusively establishes that Irvine would not have prevailed even if the RBA had considered Dr. Fraser's opinions.

## II. *FACTS AND PROCEEDINGS*

Thomas Irvine started to work for Glacier General Construction (Glacier Construction) in January 1994 as a construction estimator and superintendent. In the fall of that year, several accidents at Irvine's work site caused injuries to his lower back and aggravated preexisting injuries in his back and neck. Initially, Irvine saw Drs. Michael James and Ed Voke regarding his lower back and Dr. Fraser only for his neck. Later, in January 1996, Irvine decided to seek treatment with Dr. Fraser for his lower back injuries as well, because he felt that Drs. James and Voke did not have as good an understanding of his problems.

Irvine applied to the Board for vocational rehabilitation benefits under AS 23.30.041(c). The RBA selected Elisa Conley of Northern Rehabilitation Services to perform an evaluation and to submit a recommendation concerning Irvine's eligibility to receive reemployment benefits.

Conley consulted with Drs. Voke and James; she also considered an independent medical evaluation prepared by Dr. Eric Carlsen. These doctors concurred that Irvine was ineligible for benefits because he could perform a number of jobs that were classified under the United States Department of Labor's "Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles" (SCODDOT) as equivalent to those jobs that he had held during the ten years preceding his 1994 injuries.

Though Irvine designated Dr. Fraser as a treating physician and specifically requested Conley to contact Dr. Fraser, Conley declined to do so, evidently because she considered Dr. Voke to be primarily in charge of treating Irvine's 1994 injuries.

Based on Irvine's work history and on the opinions of Drs. Voke, James, and Carlsen, Conley reported to the RBA that she had determined that Irvine was not eligible for vocational rehabilitation benefits. RBA designee Mickey Andrew accepted Conley's report and issued a formal decision denying Irvine's application for reemployment benefits.

Irvine appealed to the Board, contending that Conley should have based her evaluation exclusively on the opinion of the doctor he had designated as his treating physician—Dr. Fraser. At a hearing on Irvine's appeal, the Board considered testimony from both Conley and Dr. Fraser. Conley testified consistently with her report and indicated that she did not believe it necessary for her to consult with Dr. Fraser. Dr. Fraser testified that as a result of his 1994 injuries, Irvine was totally disabled and was incapable of holding any gainful employment.

The Board concluded that Irvine had no right to dictate which physicians Conley was to rely upon to evaluate his benefits claim and that Conley had acted within her discretion in relying on the opinions of Drs. James, Voke, and Carlsen without seeking, much less considering, any evaluation by Dr. Fraser. Correspondingly, the Board found no abuse of discretion in the RBA's approval of Conley's recommendation to deny benefits. The Board also noted that Dr. Fraser's testimony at the hearing would not suffice to support Irvine's claim in any event, since Dr. Fraser did not rely on the SCODDOT standards.

Irvine appealed the Board's ruling to the superior court, which affirmed, concluding, as

had the Board, that in preparing her evaluation, Conley was not required to consult with Dr. Fraser: "The RBA and the Board have the authority to determine which physicians to rely upon in assessing Irvine's eligibility for reemployment benefits." After noting that the Board properly rejected Dr. Fraser's hearing testimony because the doctor did not use the SCODDOT listings, the court concluded that substantial evidence supported the Board's decision.

Irvine appeals.

## III. *DISCUSSION* [1]

■ Alaska law provides that an employee who suffers a compensable injury that may permanently preclude return to the employee's occupation at the time of injury may apply to the RBA for reemployment benefits to obtain retraining in a new occupation.[2] When an employee applies for benefits, the RBA selects a rehabilitation specialist to perform an eligibility evaluation and prepare a report.[3]

Under AS 23.30.041(d), the RBA then makes a determination as to eligibility based solely on the evaluator's report and informs the employee and employer of the decision.[4] Either party may seek review of the RBA's decision by requesting a hearing before the Board under AS 23.30.110.[5] The Board reviews the RBA's decision for abuse of discretion.[6] Both the employer and the employee are entitled to "present evidence in respect to the claim" at the hearing.[7]

Under AS 23.30.041(e), the injured employee becomes eligible for benefits upon the employee's written request and by having a physician predict that the employee will have permanent physical capacities that are less than the physical demands of the employee's job.[8] For purposes of determining "the

1. This case presents questions of statutory interpretation, to which this court accords de novo review, adopting the rule of law that is most persuasive in light of precedent, reason, and policy. *See Boone v. Gipson*, 920 P.2d 746, 748 (Alaska 1996).

2. *See* AS 23.30.041(c). The section provides in full:

 If an employee suffers a compensable injury that may permanently preclude an employee's return to the employee's occupation at the time of injury, the employee or employer may request an eligibility evaluation for reemployment benefits. The employee shall request an eligibility evaluation within 90 days after the employee gives the employer notice of injury unless the administrator determines the employee has an unusual and extenuating circumstance that prevents the employee from making a timely request. The administrator shall, on a rotating and geographic basis, select a rehabilitation specialist from the list maintained under (b)(6) of this section to perform the eligibility evaluation.

3. *See* AS 23.30.041(c) & (d).

4. AS 23.30.041(d) provides:

 Within 30 days after the referral by the administrator, the rehabilitation specialist shall perform the eligibility evaluation and issue a report of findings. The administrator may grant up to an additional 30 days for performance of the eligibility evaluation upon notification of unusual and extenuating circumstances and the rehabilitation specialist's request. Within 14 days after receipt of the report from the rehabilitation specialist, the

administrator shall notify the parties of the employee's eligibility for reemployment preparation benefits. Within 10 days after the decision, either party may seek review of the decision by requesting a hearing under AS 23.30.110. The hearing shall be held within 30 days after it is requested. The board shall uphold the decision of the administrator except for abuse of discretion on the administrator's part.

5. *See id.*

6. *See id.*

7. AS 23.30.110(d).

8. *See* AS 23.30.041(e). The section reads in full:

 An employee shall be eligible for benefits under this section upon the employee's written request and by having a physician predict that the employee will have permanent physical capacities that are less than the physical demands of the employee's job as described in the United States Department of Labor's "Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles" for
 (1) the employee's job at the time of injury; or
 (2) other jobs that exist in the labor market that the employee has held or received training for within 10 years before the injury or that the employee has held following the injury for a period long enough to obtain the skills to compete in the labor market, according to specific vocational preparation codes as described in the United States Department of Labor's "Se-

physical demands of the employee's job," subsection (e) adopts the job descriptions set out in SCODDOT and considers not just the employee's job at the time of injury, but also "other jobs that exist in the labor market that the employee has held or received training for within 10 years before the injury or that the employee has held following the injury for a period long enough to obtain the skills to compete in the labor market .... " [9]

On appeal, Irvine faults the evaluator, Conley, for failing to honor his request to consider the opinion of Dr. Fraser before making her initial eligibility evaluation. Irvine maintains that AS 23.30.041(e) gives applicants the right to choose the physician whom the RBA evaluator must consult for purposes of determining eligibility; Irvine further maintains that the evaluator is bound by the designated physician's prediction. In advancing this argument, Irvine relies on the language in subsection (e) providing that an injured employee who applies for reemployment benefits "shall be eligible" to receive benefits "by having a physician predict" the employee's inability to continue in the occupation the employee was performing at the time of injury.[10]

Irvine similarly faults the Board for deferring to the RBA's decision to deny him benefits and for ignoring Dr. Fraser's testimony at the evidentiary hearing. Because Dr. Fraser testified that Irvine "could do no work at all," Irvine reasons that under AS 23.30.041(e) the Board was required to find him eligible for benefits, just as Conley would have been required to find him eligible had she consulted with Dr. Fraser in performing the initial eligibility evaluation.

Glacier Construction responds that the Board properly determined that the RBA did not commit an abuse of discretion in denying Irvine benefits. Glacier contends that because the RBA's decision is governed by the "abuse of discretion" standard,[11] the RBA and the RBA's designated evaluator necessarily have discretion to determine how to perform an eligibility evaluation. Hence, in Glacier's view, Conley was free to choose which potential sources of medical information to consider in evaluating Irvine's eligibility for benefits.

Glacier's position comports with the Board's view of the applicable law. In affirming the RBA's decision, the Board stated:

[W]e find we would exceed our statutory authority if we interpreted AS 23.30.041(e) as requiring the RBA Designee to get and rely only upon Dr. Fraser's prediction. We find the RBA is free to choose which physician's opinion she will rely upon. We believe a corollary of this principle is that the RBA Designee may also decide from which physician she will seek opinions. We do not believe it is necessary for the RBA Designee to seek opinions from all physicians that have seen or treated Employee.

(Citations omitted.)

■ But in our view, neither Irvine nor Glacier correctly interprets the statutory requirements governing the evaluation of an applicant's eligibility for benefits. Though we believe that AS 23.30.041(d) vests the RBA's designated evaluator with considerable discretion in performing an eligibility evaluation and does not confer eligibility automatically to an applicant who offers a favorable medical opinion, we also believe that AS 23.30.041(e) allows the applicant to designate a treating physician who must be consulted, and whose views must be considered, in the evaluation process.

In providing that "[a]n employee shall be eligible for benefits ... by having a physician predict that the employee will have permanent physical capacities that are less than the physical demands of the employee's job," AS 23.30.041(e) strongly suggests that the employee who applies for benefits is entitled to designate a physician to support the application. The clause "by having a physician predict" refers back to the "employee"; the employee is the agent in this evidentiary process. Accordingly, the language puts the

---

lected Characteristics of Occupations Defined in the Dictionary of Occupational Titles."

**9.** *Id.*

**10.** *Id.*

**11.** AS 23.30.041(d).

prerogative with the employee in the first instance.

 In this case, Conley considered an evaluation performed by a doctor chosen by Glacier Construction but disregarded Irvine's selection of Dr. Fraser as his primary physician and instead consulted with two other doctors who had treated Irvine's injuries— Drs. Voke and James. To permit Conley to disregard Irvine's choice of medical opinion would deprive Irvine of a choice that AS 23.30.041(e) apparently meant to give him. This court has recognized that failing to consider statutorily mandated factors amounts to an abuse of discretion.[12] Because AS 23.30.041(e) required Conley to consult Dr. Fraser in preparing Irvine's eligibility evaluation, Conley had no discretion to ignore the doctor completely. In relying on Conley's flawed report, the RBA abused its discretion; and in upholding the RBA's decision as a sound exercise of discretion, the Board committed legal error.[13]

Irvine urges us to go further and make eligibility for benefits turn exclusively on the favorable recommendation of an applicant's designated physician. Under Irvine's proposed reading, subsection (e) would leave neither the RBA nor the Board any discretion to consider or weigh conflicting medical evidence. The designated physician's opinion would be binding and the entitlement to benefits would be virtually automatic.

Irvine recognizes that his proposed interpretation is at odds with *Yahara v. Construction & Rigging, Inc.*, where we held that when the Board hears two conflicting medical opinions concerning eligibility for reemployment benefits, both of which qualify as substantial evidence, the Board has discretion to favor either opinion over the other.[14] But, relying on the plain language of AS 23.30.041(e), Irvine argues that we should overrule *Yahara* as incorrectly decided, contending that the Board only has discretion to determine whether someone is a "physician."

 We decline Irvine's invitation to overrule *Yahara*. This court held in *Kirby v. Alaska Treatment Center* that the presumption of compensability established in AS 23.30.120 extends to claims for vocational rehabilitation.[15] But this statutory presumption is not irrebuttable.[16] Rather, only where the employer fails to produce substantial evidence does the presumption compel a decision favoring the employee.[17] Moreover, as we have already noted, the provisions of AS 23.30.041 governing reemployment benefits expressly grant the RBA discretion in determining applicants' eligibility for reemployment benefits;[18] and they also vest employers and employees alike with the right to present evidence to and have their arguments considered by the Board.[19] Our review of these provisions convinces us that AS 23.30.041(e) cannot properly be read to hinge the right to reemployment benefits entirely on the prediction of the applicant's designated physician.

 We therefore conclude that the Board erred in deferring to the RBA's decision and in failing to recognize Irvine's right to have Dr. Fraser's views considered during the eligibility evaluation. But, in doing so, we decline to hold that AS 23.30.041(e) entitled Irvine to benefits based solely on Dr. Fra-

---

12. *See McDanold v. McDanold*, 718 P.2d 467, 469 (Alaska 1986).

13. We note that, for similar reasons, the "abuse of discretion" standard prescribed by AS 23.30.041(d) must yield to the Board's authority to make de novo determinations under AS 23.30.110 when, on appeal from an RBA decision granting or denying reemployment benefits, the parties present relevant evidence to the Board that the RBA failed to consider. Because the RBA's decision in such cases would not have been based on all of the relevant evidence properly before the Board, the Board's deference to the RBA under the "abuse of discretion" standard would be inappropriate.

14. *Yahara v. Construction & Rigging, Inc.*, 851 P.2d 69, 72 (Alaska 1993).

15. *See Kirby v. Alaska Treatment Ctr.*, 821 P.2d 127, 129 (Alaska 1991).

16. *See id.*

17. *See id.*

18. *See* AS 23:30.041(d).

19. *See id.* (providing for a hearing under AS 23.30.110 upon either party's request in reemployment-benefit cases); AS 23.30.110(d) (providing that either party may present evidence in a hearing under AS 23.30.110).

ser's favorable recommendation. Indeed, our review of the record convinces us that the RBA's failure to consider Dr. Fraser's views amounted to harmless error.

Under AS 23.30.041(e), an injured employee is entitled to reemployment benefits by having a physician predict that the employee will permanently lack the physical capacity to meet "the physical demands of the employee's job *as described in the [SCODDOT]* ...."[20] This court has consistently enforced subsection (e)'s requirement that medical opinions concerning eligibility for reemployment benefits be specifically referenced to the SCODDOT standards.[21]

For instance, in *Konecky v. Camco Wireline, Inc.* an injured employee, Konecky, argued that the SCODDOT's job descriptions were antiquated and unrelated to his job's actual physical demands, which were much greater than those listed in the SCODDOT.[22] Because Konecky was unable to perform the work for which he was trained, he argued that the Board should be able to "depart from the [SCODDOT] description when the facts require such action."[23] We rejected Konecky's argument.[24] While acknowledging that unfairness would result in certain circumstances, we maintained that the plain language of AS 23.30.041(e) leaves no room for the suggested departure: "[The statutory language] is plain and demands that reemployment benefit eligibility be determined by the [SCODDOT] job descriptions. The legislature neither expressed nor implied any exceptions."[25]

In the present case, although Dr. Fraser testified at the hearing before the Board that Irvine "could do no work at all," the doctor did not couch her opinion in terms of the SCODDOT standards. In fact, the record establishes beyond question that Dr. Fraser felt uncomfortable with the SCODDOT standards and would not rely on them as a basis for evaluating Irvine's physical capacity to

perform work comparable to the job he held when injured. We note, in particular, Dr. Fraser's response to the Board's questions at the hearing:

Q So I guess I'm trying to—can you or can you not express an opinion about his [Irvine's] ability to work just based on his low back X-ray?

A Based on his low back? If I had to—I think on his low back I would probably—if he had a normal neck and head, his low back—I don't—it's really hard to get a job where you can't sit comfortably or can't stand. I think he's pretty disabled. You know, I don't do these evals. I'm not very clever at it.

Q Does that mean you're not very comfortable making that kind of an evaluation?

A I'm not comfortable because I don't do [them].

Q Okay. I guess I can understand that. Thank you, Dr. Fraser.

■ Irvine argues that Dr. Fraser's testimony fulfilled the statute's requirements as a matter of law because her more global assessment would encompass any job description in the SCODDOT. But Dr. Fraser's opinion does not satisfy the demands of AS 23.30.041(e). Moreover, her categorical statement, "I don't do these [SCODDOT] evals," makes it clear that it would be futile to remand this case for a new RBA eligibility evaluation based on consultation with Dr. Fraser.

## IV. CONCLUSION

Because we conclude that the Board's error was harmless, we AFFIRM the superior court's judgment.

20. AS 23.30.041(e) (emphasis added).

21. *See, e.g., Konecky v. Camco Wireline, Inc.,* 920 P.2d 277, 280 (Alaska 1996); *Yahara v. Construction & Rigging, Inc.,* 851 P.2d 69, 73 (Alaska 1993); *see also Rydwell v. Anchorage Sch. Dist.,* 864 P.2d 526, 529 (Alaska 1993) (interpreting "permanent impairment" language of the statute and noting that we require strict compliance with the express statutory language).

22. *Konecky,* 920 P.2d at 280.

23. *Id.*

24. *See id.* at 283.

25. *Id.* at 282.