**Shirley F. MORGAN, Appellant,**

v.

**LUCKY STRIKE BINGO, Royal Insurance Company/GAB Business Services, Appellees.**

**No. S–7445.**

Supreme Court of Alaska.

June 13, 1997.

Charles W. Coe, Anchorage, for Appellant.

Robert B. Mason, Mason & Griffin, Anchorage, for Appellees.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

The Alaska Workers' Compensation Board denied Shirley Morgan's claim for vocational reemployment benefits because it found her to be ineligible under AS 23.30.041(e).[1]  Mor-

---

1. AS 23.30.041(e) provides: [a]n employee shall be eligible for benefits under this section upon the employee's written

gan appeals from the superior court decision affirming the Board's denial. We affirm, because that statute compelled the Board to follow the United States Department of Labor's "Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles" (*SCODDOT*) description of the physical demands of Morgan's job in determining her eligibility, and because there was substantial evidence that Morgan was able to perform the physical demands of her job as described in *SCODDOT*.

## II. *FACTS AND PROCEEDINGS*

Morgan, a general manager at Lucky Strike Bingo, was stacking boxes on January 17, 1994, when a box fell on her, injuring her head, neck, and shoulder. G. Lee Waldroup, D.C., Morgan's treating chiropractor, saw her numerous times over the following year for headaches, severe neck pain, and arm and shoulder pain. Morgan was laid off from her job shortly after her injury. She timely requested an eligibility evaluation for reemployment benefits pursuant to AS 23.30.041(c).

Leonard Mundorf, MSEd, CAS, CRC, from Crawford & Co. Healthcare Management, performed the eligibility assessment. As part of the evaluation, he selected the job titles "Accountant, Budget" and "Supervisor/Manager" from *SCODDOT* on the theory they most closely represented Morgan's work

history with Lucky Strike Bingo.[2] *SCODDOT* classifies both positions as "sedentary work."[3] Mundorf prepared job descriptions that replicate *SCODDOT*'s definition of "sedentary work" almost verbatim.

Mundorf submitted these job descriptions to Dr. Waldroup for review. Dr. Waldroup concluded that Morgan currently had the physical capability of performing both positions as described by *SCODDOT* and that she would also be able to perform the positions after reaching medical stability. Consequently, Mundorf stated in his Eligibility Assessment Report that, based upon Dr. Waldroup's approval of the job descriptions, it appeared Morgan was not eligible for reemployment benefits.

About one week later, Dr. Waldroup telephoned Crawford & Co. Healthcare Management and spoke with another eligibility assessor, Dennis Johnson. When Dr. Waldroup explained that it would not be advisable for Morgan to return to the specific job she held when she was injured because of her difficulty with some of the repetitive motions involved, Johnson explained to Dr. Waldroup that the *SCODDOT* job titles describe the type of work performed rather than a specific job held at the time of injury. According to Johnson, Dr. Waldroup stated that

---

2. The parties do not dispute Mundorf's choice of job titles. For ease of discussion, we will refer to the two *SCODDOT* job titles as a single occupation—"accountant/manager."

request and by having a physician predict that the employee will have permanent physical capacities that are less than the physical demands of the employee's job as described in the United States Department of Labor's "Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles" for
   (1) the employee's job at the time of injury; or
   (2) other jobs that exist in the labor market that the employee has held or received training for within 10 years before the injury or that the employee has held following the injury for a period long enough to obtain the skills to compete in the labor market, according to specific vocational preparation codes as described in the United States Department of Labor's "Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles."

3. *SCODDOT* describes the physical demands of an occupation in terms of twenty different factors. Similar factors are listed in the definition of "physical demands" found in AS 23.30.041(p)(5). The first demand is strength, which is defined by five different levels: sedentary, light, medium, heavy, and very heavy. Sedentary work involves

exerting up to 10 pounds of force occasionally or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body. *Sedentary work involves sitting most of the time*, but may involve walking or standing for brief periods of time.

U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* Appendix C–2 (1993) (emphasis added). It is not relevant here that the *Dictionary of Occupational Titles* was revised in 1993, after the legislature repealed and reenacted AS 23.30.041 in 1988.

he would have no reason to answer those descriptions any differently than he did initially based on the information contained in the descriptions. He also agreed that she may likely function quite well in this type of work in a different work setting. According to Johnson, Dr. Waldroup also then stated that Morgan should avoid jobs involving constant repetitive motion or requiring her to remain stationary for extended periods of time.

Johnson conveyed Dr. Waldroup's new concerns to the Reemployment Benefits Administrator (RBA) in the form of an addendum to the Eligibility Assessment Report. Basing her decision on both the initial report and the addendum, the RBA determined that Morgan was not eligible for reemployment benefits because Dr. Waldroup had indicated to Mundorf that Morgan's predicted permanent physical capacities would enable her to perform the job as described by *SCODDOT.* The RBA also stated that in the addendum report Dr. Waldroup "continued to note that [Morgan] can do the job as it is described in the *Dictionary of Occupational Titles* although he felt that [she] might not function as well in some work settings."

Morgan appealed the RBA's decision to the Board. At the hearing, Dr. Waldroup testified that he wished to withdraw his earlier approval of the job descriptions because they did not include as a physical demand sitting with the head forward.[4] He was most concerned with this aspect of the accountant/manager position. He also testified that he still approved of the job descriptions as written.[5]

The Board concluded that AS 23.30.041(e) requires that the RBA use "the theoretical description of the physical requirements of the job as described in the *SCODDOT* ... [and] not the actual duties the employee was required to perform in the job." Since the RBA met the requirements of the statute by applying *SCODDOT*'s job description, the Board found that she did not abuse her discretion in denying benefits, and thus upheld her determination. The superior court affirmed the Board's decision. This appeal followed.

## III. DISCUSSION

A. Did the Board Err in Affirming the RBA's Determination that Morgan Was Ineligible for Reemployment Benefits?

■ Morgan argues that the RBA abused her discretion in finding Morgan ineligible for benefits under AS 23.30.041(e) and that the Board erred in affirming the RBA's determination. Morgan contends that the RBA and Board did not consider evidence that she was unable to meet one of the physical requirements of the job as described in *SCODDOT*—"sitting most of the time." The evidence that she alleges the RBA and Board ignored includes Dr. Waldroup's reported statement to Dennis Johnson that "[s]he should avoid a work setting involving constant repetitive motion or remaining in a stationery [sic] position for long periods of time." Morgan also points to Dr. Waldroup's Board testimony in which he withdrew his earlier approval of the job descriptions prepared by Mundorf.

■ The Board is required to uphold the RBA's determination unless the RBA has abused her discretion. AS 23.30.041(d). An abuse of discretion exists when a decision is arbitrary, capricious, manifestly unreasonable, or stems from improper motive. *Sheehan v. University of Alaska,* 700 P.2d 1295, 1297 (Alaska 1985). Lucky Strike contends that the Board correctly upheld the RBA's determination because substantial evidence— Dr. Waldroup's approvals of the job descriptions—existed to support her decision.

---

4. Dr. Waldroup testified:

   ... as the job description was listed I didn't have ... a problem, but there was no mention in there about how Ms. Morgan was sitting— about how long she would be sitting with her head forward and things like that, which was what was causing her a lot of problems, and that was my major concern.

5. At the hearing, Dr. Waldroup was asked:

   Q: Okay. The main thing I want to establish today is, Doctor, that you still approve of the job descriptions as they were written.
   A: As they were written, I would have to, yes.

This court reviews findings of fact made by the Board under the substantial evidence standard. *Morrison v. Afognak Logging, Inc.*, 768 P.2d 1139, 1141 (Alaska 1989). We determine "whether there is substantial evidence in light of the whole record that a reasonable mind might accept as adequate to support the Board's conclusion." *Id.* at 1141. The court does not independently reweigh the evidence. *Id.*

Dr. Waldroup's repeated statements and testimony that Morgan could perform the job as it is described in *SCODDOT* are substantial evidence supporting the Board's affirmation of the RBA's determination. Moreover, the record does not support Morgan's contention that "sitting most of the time" was itself a problem.[6]

B. *Did the Board Err when It Relied Exclusively on the SCODDOT Description of the Position and Failed to Consider the Actual Physical Demands of Morgan's Specific Job?*

While substantial evidence supports the conclusion that Morgan could perform the job as described in *SCODDOT*, there is also evidence that supports her claim that she could not perform her actual job because it required sitting with her neck continuously bent—a motion that her chiropractor testified caused her much difficulty.[7] Morgan argues that when *SCODDOT* is silent about a particular physical demand—here, sitting with the neck bent—the RBA is required to look at the demands of the actual job in determining eligibility.[8]

Morgan argues that the bending of one's neck is such an obvious lesser-included part of the physical requirements of a sedentary job that *SCODDOT* does not even list it as a physical demand. She contends that the Board must infer this physical requirement. Morgan fails to present any evidence that supports her contention that "neck-bending" is an inherent part of sitting.[9] Nor does she provide any support for her argument that the Board is required or even permitted to imply "lesser-included" physical requirements when they are not expressly listed in *SCODDOT* descriptions. Indeed, the Board concluded that since *SCODDOT* does not list continuous neck bending as a physical demand of the job, Morgan's neck problems were inconsequential to the determination of eligibility.

The Board noted that the legislature amended the Worker's Compensation Act in 1988 to provide for "quick, efficient, fair and predictable delivery of indemnity and medical benefits to injured workers at a reasonable cost to employers...." Ch. 79, § 1, SLA 1988. This court has recognized the legislature's desire for objective, predictable and bright-line measurements in the administration of the worker's compensation system in *Rydwell v. Anchorage School District*, 864 P.2d 526 (Alaska 1993). *See also Konecky v. Camco Wireline, Inc.*, 920 P.2d 277, 283 (Alaska 1996).

The Board thus concluded that "[i]f the RBA was [sic] required to examine every *SCODDOT* job description for errors or si-

---

**6.** For example, one doctor who assessed her for work release did not include a restriction on sitting as a work release limitation. He noted that she should not lift more than ten pounds on a repetitive basis for about a month, when she would be able to return to her full duties. In addition, a physical therapist concluded that she could sit for sixty minutes at a time for a total of eight hours in a workday.

**7.** Dr. Waldroup testified that he was concerned about any type of work Morgan had to perform which required her to sit "with her head forward for any length of time."

**8.** Whether the RBA is to consider the physical demands contained in the theoretical description of a job in the *SCODDOT* or the actual job turns on a question of statutory interpretation, which we review under the independent judgment stan-

dard. *Konecky v. Camco Wireline, Inc.*, 920 P.2d 277, 280 (Alaska 1996); *Rydwell v. Anchorage Sch. Dist.*, 864 P.2d 526, 528 (Alaska 1993). When the superior court acts as an intermediate court of appeal, this court gives no deference to its decision. *Konecky*, 920 P.2d at 281; *Rydwell*, 864 P.2d at 528.

**9.** Lucky Strike points out that the amount of required neck bending would vary depending upon the height of her desk, the height and angle of her computer screen, and how much time she spent at various activities such as reading, working at the computer, and talking on the telephone. Presumably her work-site conditions could be modified to reduce substantially, if not eliminate, the amount of neck bending.

lences, the legislative intent and the requirement for the use of the *SCODDOT* would be undermined." *See Konecky,* 920 P.2d at 282–83.

According to *SCODDOT,* the physical demands ratings "provide a systematic way of describing the physical activities that an occupation requires of a worker." *SCODDOT* at Appendix C–1. The physical demands are described in relationship to twenty different factors. We have already discussed the first factor, strength, which lists "sedentary work" as the easiest level. Included among the other nineteen physical demands are activities such as climbing, crawling, balancing, stooping, kneeling, crouching, reaching, handling, fingering, talking, and seeing. AS 23.30.041(p)(5). "Neck bending" is neither a listed physical demand under AS 23.30.041(p)(5), nor is it included in the *SCODDOT* description of sedentary work.[10] "Neck bending" thus does not appear as a physical requirement for any job.

*SCODDOT* rates the twenty factors in terms of the frequency of the occurrence of the activity for the particular job title. For example, the positions of Accountant, Budget and Supervisor/Manager involve no stooping, kneeling, crawling, or crouching; occasional reaching and handling, frequent fingering, and the ability to see clearly at twenty inches or less. All physical requirements of all the occupations listed in *SCODDOT* are evaluated exclusively in terms of the frequency of these twenty factors and no others. The physical demands of *SCODDOT* are necessarily incomplete and nonexhaustive. Requiring the Board to go beyond these twenty factors to fill gaps that invariably exist would undermine the legislature's purpose of ensuring a quick, objective, and efficient system. This would effectively require the Board to engage in precisely the sort of individualistic, job-specific inquiry that the legislature intended to avoid by enacting the 1988 amendments.

We recently addressed the question of whether the Board should consider the *SCODDOT* description or the actual requirements of the injured employee's specific job in *Konecky,* 920 P.2d 277. We there affirmed a Board decision reversing the RBA's award of reemployment benefits because the RBA failed to use the *SCODDOT* description to determine eligibility and instead incorrectly used the actual physical demands of the employee's job. *Id.* at 281.

The rehabilitation specialist found that Konecky was able to perform the "medium work" requirement of lifting a maximum of fifty pounds as specified in the *SCODDOT*'s description of his job as hoist operator. *Id.* at 279. The requirements of his actual job, however, required lifting in excess of 100 pounds—a physical demand he was unable to perform. *Id.* In addition, a survey conducted by the rehabilitation specialist found that the position of "hoist operator" as it was defined by *SCODDOT* did not exist in the labor market. *Id.* at 279–80.

The Board agreed that Konecky's actual job and other hoist operator positions in the labor market require lifting more than fifty pounds: "[t]hey are clearly not medium capacity jobs as defined in the *SCODDOT*." *Id.* at 280. The Board concluded, however, that AS 23.30.041(e) required the RBA to use the *SCODDOT* description and not the actual physical demands of his specific job, and that the RBA's failure to use the *SCODDOT* was an abuse of discretion. *Id.* We affirmed the Board's reversal of the RBA and held that

[t]he language of AS 23.30.041(e) is clear—the Board must compare the physical demands of a specific job as found in *SCODDOT* with the employee's physical capacities.

Employees are eligible for reemployment benefits only if their physical capacities are less than the physical demands as described in *SCODDOT.*

*Id.* at 281.

We stated that

---

**10.** Note that other physical demands describe the physical motions involved in the activity. For example, "stooping" is defined in part as "[b]ending body downward and forward by bending spine at the waist, requiring full use of the lower extremities and back muscles."

"Stooping" thus could be interpreted as requiring the delineated use of these specified body parts. *SCODDOT, supra* note 3, at Appendix C–1. "Sitting" is not expressly defined, nor is neck bending mentioned.

[t]he legislature's language is plain, and demands that reemployment benefit eligibility be determined by the *SCODDOT* job descriptions. The legislature neither expressed nor implied any exceptions. The statute's plain language was apparently intended to minimize or avoid prolonged and expensive disputes about eligibility for reemployment benefits by inflexibly relying on the Department of Labor's extensive occupational dictionary and job analyses.

*Id.* at 282.

## IV. *CONCLUSION*

The superior court's decision is accordingly AFFIRMED.