*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LAURIE E. VANDENBERG, | ) | |
| | ) | Supreme Court No. S-15935 |
| Appellant, | ) | |
| | ) | Alaska Workers' Compensation |
| | ) | Appeals Commission No. 14-019 |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF HEALTH & | ) | No. 7096 – April 8, 2016 |
| SOCIAL SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission, Andrew M. Hemenway, Commission Chair.

Appearances: Joseph A. Kalamarides, Kalamarides & Lambert, Anchorage, for Appellant. Daniel N. Cadra, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Fabe, Winfree, Maassen, and Bolger, Justices. [Stowers, Chief Justice, not participating.]

FABE, Justice.

## I.  INTRODUCTION

After a work-related injury left a nurse with a permanent partial impairment, she applied for reemployment benefits. The rehabilitation specialist assigned to her case used two job descriptions to describe one of the nurse's former jobs

because the specialist did not think that a single job description adequately described that former job. The Alaska Workers' Compensation Board decided that only one job description was needed and that the nurse retained the physical capacity to perform the functions of that job description; it therefore denied her reemployment benefits. The Alaska Workers' Compensation Appeals Commission affirmed the Board's decision. The nurse appeals, arguing that the Board erred in selecting only one job description because the job description it selected did not adequately describe the job she held. We agree and reverse the Commission's decision.

## II. FACTS AND PROCEEDINGS

Laurie Vandenberg injured her right shoulder when she reached for her laptop computer and "paperwork bag" while working for the State, Department of Health & Social Services (DHSS) as a Nurse II. Because Vandenberg missed more than 90 consecutive days of work, her employer notified the Rehabilitation Benefits Administrator (Administrator), who assigned an independent rehabilitation specialist, Lulie Williams, to perform Vandenberg's reemployment benefits eligibility evaluation.[1] A doctor assessed a four-percent whole-person impairment for Vandenberg after her surgery, making her potentially eligible for either reemployment or job dislocation benefits.[2]

To make an eligibility determination, Williams looked at the job Vandenberg held at the time of her injury, as well as jobs she held in the ten years before

---

[1] AS 23.30.041(c) currently provides that, when an employee misses more than 90 consecutive days of work because of a work-related injury, the Administrator "shall, without a request, order an eligibility evaluation unless a stipulation of eligibility was submitted."

[2] Under AS 23.30.041(f)(4) an employee must have some permanent impairment to be eligible for reemployment benefits. Job dislocation benefits can be selected in lieu of reemployment benefits. AS 23.30.041(g).

the injury, as the statute required.[3] For purposes of this appeal, only one job is relevant: Vandenberg had worked as a Health Facilities Surveyor (Surveyor) for DHSS for three and a half years during this ten-year period. Williams looked at the job description for the Surveyor position online and spoke with a DHSS employee about the job requirements. DHSS told Williams that the job required the ability to lift 50 pounds and that "no accommodations [could] be made" to avoid this requirement. In addition the job description required applicants to have professional training. Nursing training, licensing, and professional experience were preferred, but an applicant could substitute other relevant professional experience; all of the alternative professional experience included a bachelor's degree in some field related to medicine or health sciences.

Based on the information Williams received, she decided that no single job in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO) matched the Surveyor position.[4] She selected two jobs from the Dictionary of Occupational Titles (Dictionary) to describe the Surveyor position: Inspector, Health Care Facilities and Nurse, General Duty. She included the Nurse, General Duty job title because it is a "medium" nursing job,[5] matching both the actual

---

[3]    *See* AS 23.30.041(e).

[4]    AS 23.30.041(e) requires the use of the U.S. Department of Labor's *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* when assessing eligibility for reemployment benefits; the 1993 edition was used in this case as required by statute. As the title suggests, the job descriptions themselves are in the Dictionary of Occupational Titles; the SCO sets out the physical requirements needed to perform the jobs described in the Dictionary. *See Morgan v. Lucky Strike Bingo*, 938 P.2d 1050, 1055 (Alaska 1997) (explaining physical-demands ratings in the SCO).

[5]    The SCO has five strength levels: Sedentary, Light, Medium, Heavy, and Very Heavy. U.S. DEP'T OF LABOR, SELECTED CHARACTERISTICS OF OCCUPATIONS
(continued...)

strength requirements and the professional or educational requirements of the Surveyor position. According to a letter Williams wrote to Penny Helgeson, the Administrator's designee who worked on Vandenberg's case,[6] the Surveyor job required travel and carrying "manuals, personnel files, and a computer . . . [that] cannot be checked in baggage because of [federal Health Insurance Portability and Accountability Act] regulations." Williams evidently considered other "medium" job titles with duties similar to carrying these materials, but "was unable to come up with anything suitable, such as Baggage Handler." Consequently, she settled on Nurse, General Duty as a job description to use in conjunction with Inspector, Health Care Facilities to describe more completely the Surveyor job.

Williams sent these job descriptions, along with several others, to Vandenberg's doctor, who predicted that Vandenberg would not have the physical capacity to perform the medium-strength Nurse, General Duty position; he thought she would have the capacity to perform the sedentary physical demands[7] of Inspector, Health Care Facilities. Based on these predictions, Williams determined that Vandenberg was eligible for reemployment benefits.

---

[5]     (...continued)
DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES C-1 (1993) [hereinafter SCO]. "Medium Work involves exerting 20 to 50 pounds of force occasionally . . . ." *Id.* at C-2.

[6]     AS 23.30.041(a) permits the Administrator, if authorized by the Director of the Division of Workers' Compensation, to "select and employ additional staff." In the Board's regulations, "reemployment benefits administrator" or "administrator" refers to either the Administrator or her designee. 8 Alaska Administrative Code (AAC) 45.900(e) (2015).

[7]     "Sedentary Work involves exerting up to 10 pounds of force occasionally or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body." SCO, *supra* note 5, at C-2.

Helgeson disagreed with Williams's conclusion that Inspector, Health Care Facilities was not, by itself, an adequate description of the job duties (as opposed to the qualifications) of the Surveyor position. She instructed Williams to "[a]pportion the time the employee spent performing the duties for each job title identified if multiple titles are used." In response, Williams explained the reasons she selected the job descriptions and reported that she did not think it would "add anything important to the report" to apportion time between different job titles.

Helgeson rejected Williams's rationale for including the Nurse, General Duty job description to complete the Surveyor job description, expressing her understanding that "titles are not selected based on the strength demands but rather on the duties the employee performed." Based on *Konecky v. Camco Wireline, Inc.*,[8] Helgeson insisted that "reemployment benefits eligibility is determined by the [SCO] job descriptions, even when the actual physical demands of the job may exceed the strength demands as outlined" there. Helgeson determined "the title for Health Facilities Inspector [was] sufficient" to describe the Surveyor position.

Helgeson instructed Williams to "[c]onduct labor market research to document whether or not the job for a Health Facilities Inspector exists in the labor market." Williams did so, concluding that jobs for Inspector, Health Care Facilities do exist. Helgeson then determined Vandenberg was not eligible for reemployment benefits because of her decision that only the Inspector, Health Care Facilities job description was needed to describe the Surveyor position; the doctor's prediction that Vandenberg could perform the physical demands of that job description; and the existence of Inspector, Health Care Facilities jobs in the labor market.

---

[8]     920 P.2d 277 (Alaska 1996).

Vandenberg appealed the denial to the Board, which held a hearing on her reemployment benefits eligibility.[9] Vandenberg and Williams both testified. Williams identified the differences in qualification level between the Inspector, Health Care Facilities job description in the Dictionary and DHSS's Surveyor position: She testified that the Surveyor position was a "journeyman" position, having higher educational requirements for all areas than the Inspector, Health Care Facilities position as set out in the Dictionary. She reiterated her opinion that the Inspector, Health Care Facilities job description alone did not adequately describe the Surveyor job Vandenberg held.

Williams agreed that Vandenberg met the strength requirements for the Inspector position in the Dictionary. She also agreed that "[t]he position of health facilities surveyor does not require the employee to perform the functions of a nurse," but she thought there was a difference between a nurse observing medication administration and a person who was not trained as a nurse doing so. On cross-examination Williams reaffirmed her opinion that the two job descriptions required different levels of professional knowledge. She testified that rehabilitation specialists "don't just look at the duties" when they pick job descriptions to match an employee's job.

Vandenberg testified about her job as a Surveyor. She explained that being a nurse "was the only way [she] got that job." She testified that her duties included looking at wounds, checking medications, and doing "[a] lot of chart review"; she also reported that in extreme situations, a Surveyor and her team could take over a facility,

---

[9] As a result of superior court decisions predating the Commission, the Board conducts evidentiary hearings in reemployment eligibility appeals. The Board, by statute, must uphold the Administrator's decision "except for abuse of discretion on the administrator's part." AS 23.30.041(d). As the Board noted here, "[d]etermining whether an abuse of discretion has taken place is aided by the practice of allowing additional evidence at the review hearing."

thereby taking on a nurse's role because the team would "excuse everybody from their duties" and "get them out of the facility," with the State assuming management of the facility for a period of time. Alternatively, in those situations the team could "move all the patients or clients out" of the facility. In describing why she could no longer perform the functions of the Surveyor job, Vandenberg testified that she could no longer "carry that weight limit" and that "if [she] were around clients or patients and something happened to one of them," she might not be able to help them because of her injury.

In its decision the Board agreed with Vandenberg that Helgeson had abused her discretion by exceeding her authority under applicable Board regulations.[10] It nonetheless decided the error was harmless because it agreed substantively with Helgeson. The Board compared the duties set out in the two job descriptions, and it then looked at the duties set out in the Nurse, General Duty job from the Dictionary. The Board concluded that "the job title of Inspector, Health Care Facilities reasonably reflects Employee's job as a Health Facilities Surveyor." It did not explain the origin of the "reasonably reflecting" standard. The fact that a Surveyor might "in rare cases" be required "to assume care of patients" did not change its analysis.

The Board then construed the statute and this court's decisions interpreting section .041. It concluded that inclusion of the Nurse, General Duty job description was contrary to *Konecky* because under *Konecky*, the Board reasoned, "an employee's

---

[10]     8 AAC 45.525 governs reemployment benefits eligibility determinations; 8 AAC 45.445 designates certain activities that "only the certified rehabilitation specialist assigned to a case may perform," including "selecting appropriate job titles in accordance with 8 AAC 45.525(a)(2)." 8 AAC 45.445(3). Under the regulations the Administrator "may not decide" the question of eligibility if the Administrator determines that the eligibility evaluation the rehabilitation specialist prepared "is not in accordance with 8 AAC 45.525." 8 AAC 45.530(b)(1). The regulation gives the Administrator only two options: ask for more information or reassign the employee to another rehabilitation specialist. 8 AAC 45.530(b)(2).

physical capacities must be compared to the physical demands of the [Dictionary] job description, not the employee's actual job." The Board also construed the statute as disregarding the vocational-preparation[11] and educational components of job titles when selecting the appropriate ones because, the Board reasoned, under AS 23.30.041(e)(2) "the [specific vocational preparation] is only relevant to determine if an employee held a job 'long enough to obtain the skills to compete in the labor market.' " The Board acknowledged that the "result may seem harsh," but maintained that it is "the approach the legislature has chosen." The Board denied the claim for reemployment benefits.

Vandenberg appealed to the Commission, which affirmed the Board's decision. The Commission began its analysis by representing that 8 AAC 45.525(b)(2) directs the rehabilitation specialist to select the most appropriate job title or titles for an employee's job from the Dictionary.[12] According to the Commission, "[t]he 'most appropriate' [Dictionary] job title is the title or titles whose job description as set forth in the [Dictionary] best matches the employee's job." The Commission agreed with the Board that Nurse, General Duty did not "appropriately describe" Vandenberg's job as

---

[11]     "Specific Vocational Preparation," or "SVP," is one factor the SCO uses to classify jobs. SCO, *supra* note 5, at ix. "Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Id.* at B-1. Education beyond high school is included in the SVP. *Id.* at B-2. Many professional positions, such as attorney or nuclear engineer, have an SVP of eight. *Id.* at 48, 385. All of the nursing positions in the SCO have an SVP of seven or higher except Nurse, Licensed Practical. *Id.* at 373. The SVP for Nurse, General Duty is seven; that of Inspector, Health Care Facilities is six.

[12]     In fact, the regulation directs use of the *SCO*, not the Dictionary. 8 AAC 45.525(b)(2) provides that "[t]he rehabilitation specialist shall . . . review the appropriate volume [of the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*] and select the most appropriate job title or titles that describe the jobs held and training received."

a Surveyor. The Commission rejected Vandenberg's argument that certification as a registered nurse was a job requirement for the Surveyor position because "a nurse certificate and experience is just one of a variety of alternative minimum qualifications." It acknowledged Vandenberg's testimony that the Surveyor worked as part of a team and that she had been hired because she was a nurse. It reasoned that this "requirement is not a barrier to her reemployment as a Health Facilities Surveyor in the same position she previously occupied." The Commission concluded that a licensing requirement was not relevant to the selection of a job title unless the "licensing requirement has a physical demands component." It also determined that "substantial evidence supports the board's factual finding that the [Dictionary] job title Inspector, Health Care Facilities most appropriately describes [the] job [of] a Health Facilities Surveyor."

Vandenberg appeals.

## III.  STANDARDS OF REVIEW

In an appeal from the Alaska Workers' Compensation Appeals Commission, we review the Commission's decision rather than the Board's.[13] We apply our independent judgment to questions of law that do not involve agency expertise, including issues of statutory interpretation.[14] We interpret a statute "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[15]

---

[13]    *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 (Alaska 2014) (citing *Shehata v. Salvation Army*, 225 P.3d 1106, 1113 (Alaska 2010)).

[14]    *Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 343-44 (Alaska 2011).

[15]    *Louie v. BP Exploration (Alaska), Inc.*, 327 P.3d 204, 206 (Alaska 2014)
(continued...)

By statute the Board reviews the Administrator's decisions for an abuse of discretion.[16] In this case the Commission, based on its own precedent,[17] reviewed the Board's decision using the substantial evidence standard. We independently review the Commission's legal conclusion that substantial evidence supports the Board's factual findings by "independently review[ing] the record and the Board's factual findings."[18]

## IV. DISCUSSION

**The Commission Erred In Deciding That Substantial Evidence Supported The Board's Decision.**

Alaska Statute 23.30.041 sets out the process and qualifications for reemployment benefits; for purposes of this appeal, the relevant subsection is .041(e), which provides:

> An employee shall be eligible for benefits under this section upon the employee's written request and by having a physician predict that the employee will have permanent physical capacities that are less than the physical demands of the employee's job as described in the 1993 edition of the United States Department of Labor's "Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles" for

---

[15]    (...continued)
(citing *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003)).

[16]    AS 23.30.041(d).

[17]    *See Witbeck v. Superstructures, Inc.*, AWCAC Dec. No. 014 at 14-15 (July 13, 2006) (footnotes omitted), *available at* labor.alaska.gov/wcComm/memos-finals/F_06-001.pdf (setting out standards of review for reemployment benefits decisions).

[18]    *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009).

>           (1)      the employee's job at the time of injury; or
>
>           (2)      other jobs that exist in the labor market that the employee has held or received training for within 10 years before the injury or that the employee has held following the injury for a period long enough to obtain the skills to compete in the labor market, according to specific vocational preparation codes as described in the 1993 edition of the United States Department of Labor's "Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles."

The Board has promulgated regulations related to the reemployment process; the most salient here is 8 AAC 45.525, which sets out the reemployment benefits eligibility evaluation process. To determine eligibility, rehabilitation specialists must "interview the employee and the employer and review all written job descriptions" that describe the employee's job at the time of injury; interview the employee to "obtain descriptions of the tasks and duties for other jobs the employee held . . . within 10 years before the injury"; review the correct version of the SCO and "select the most appropriate job title or titles that describe the employee's job"; for past jobs, "identify all [relevant] job titles . . . for which the employee meets the specific vocational preparation codes"; and submit identified job titles to the employee's physician, the employee, the employer, and the Administrator.[19]  Only a rehabilitation specialist may "select[] appropriate job titles in accordance with 8 AAC 45.525(a)(2)."[20]  The Board has construed its regulations as permitting a rehabilitation specialist to select more than one

---

[19]      8 AAC 45.525(a)-(b).

[20]      8 AAC 45.445(3).

job description for an employee's actual job,[21] and DHSS does not challenge that regulatory interpretation here.

Reemployment benefits are intended to return an injured worker to remunerative employment when she cannot return to her former job or jobs for which she has the relevant training or experience.[22] The record indicates that Vandenberg cannot in fact return to her former job as a Health Facilities Surveyor because the job required the ability to lift 50 pounds and Vandenberg no longer has the physical capacity to do so. We have strictly construed the provisions of AS 23.30.041,[23] noting the legislature's intent to "promote a prompter, more efficient, more cost-effective, successful, *and less litigated* rehabilitation system."[24] But our prior decisions have not considered how a job description is selected,[25] nor have they addressed whether the Administrator and the

---

[21] *See Gonzales v. Ketchikan Pulp Co.*, AWCB Dec. No. 98-0228 at 4-5, 1998 WL 771213, at *4-5 (Sept. 3, 1998).

[22] *See Rockney v. Boslough Constr. Co.*, 115 P.3d 1240, 1242 (Alaska 2005) (describing goal of rehabilitation plan); *see also Arnesen v. Anchorage Refuse, Inc.*, 925 P.2d 661, 665 (Alaska 1996) (identifying purpose of reemployment benefits as "ensur[ing] that an injured employee has some skills with which . . . she can earn a living after an injury"); *Konecky v. Camco Wireline, Inc.*, 920 P.2d 277, 284 n.2 (Alaska 1996) (Rabinowitz, J., dissenting) (citing purpose of "awarding benefits to employees who are unable to return to the job held at the time of injury" as goal of reemployment benefits).

[23] *See Irvine v. Glacier Gen. Constr.*, 984 P.2d 1103, 1108 & n.21 (Alaska 1999).

[24] *Konecky*, 920 P.2d at 282-83 (majority opinion) (emphasis in original) (quoting House Judiciary Comm., Sectional Analysis, House Committee Substitute for Committee Substitute for SB 322, 15th Legis., 2d Sess. § 10.5 (1988)).

[25] In *Konecky*, which Helgeson and the Board both relied on, the employee did not "argue on appeal that he was a 'hoistman' (the title [his employer] gave his position) and not a 'hoist operator.'" *Id.* at 279 n.7. We observed that the SCO did not

(continued...)

Board can disregard either the actual physical requirements of a position or non-physical aspects, such as educational or vocational prerequisites, identified in the SCO when selecting the most appropriate job description or descriptions.[26]

Vandenberg disputes whether the job title Helgeson and the Board used adequately describes her position as a Health Facilities Surveyor. She contends that the job description identified — Inspector, Health Care Facilities — is not equivalent to the description of the Surveyor job she actually held, in part because her job as a Surveyor required different educational and skill levels than the Inspector, Health Care Facilities job. She also argues that her duties as a Surveyor required application of her professional knowledge, making the Dictionary job title inadequate to describe her former job.

We agree with Vandenberg that the two positions are significantly different. As set out in the Board's decision, an Inspector, Health Care Facilities "[i]nspects health care *facilities* . . . to enforce public health laws and to investigate complaints." (Emphasis added.) In contrast, a Health Facilities Surveyor "appl[ies] professional knowledge and expertise . . . *to analyze and assess the activities in the facility*." (Emphasis added.) Inspecting physical facilities and analyzing the delivery of health

---

[25]    (...continued)
list a "hoistman" position and that the Board had used "hoist operator" and "hoistman" throughout its decision; we said the Board had "implicitly made a fact finding that Konecky's position was that of hoist operator." *Id.* at 281. Here, in contrast, the Board made an explicit finding that Inspector, Health Care Facilities "reasonably reflect[ed]" the Surveyor position, and Vandenberg contests this determination. We thus agree with Vandenberg that *Konecky* is not controlling here because her case concerns the step before *Konecky* applies.

[26]    *Cf. Morgan v. Lucky Strike Bingo*, 938 P.2d 1050, 1055 (Alaska 1997) (observing that "neck bending" is not one of 20 different physical-demands factors in the SCO and thus is not "a physical requirement for any job").

care are very different activities that require different education and training. Indeed Vandenberg testified that her job included medical chart review as well as "looking at the patients, watching medications, [and] checking wounds." She added that as a Surveyor, she observed "the nurses and the nurses aid[e]s" as well as patients when fulfilling her inspection duties. Vandenberg's testimony that DHSS "always [had] to have somebody who's a lab person or they have to contract that out" underscores the need for specific professional training for the Surveyor position.

Nothing in the Inspector, Health Care Facilities job description indicates that professional expertise or training in health care or nursing is required for that position, nor does the Inspector, Health Care Facilities description require analysis of the performance of medical procedures. The position as set out in the Dictionary emphasizes inspection of facilities and reviewing reports related to "staffing, personal references, floor plans, fire inspections, and sanitation." Finally, nothing in the Inspector, Health Care Facilities job description indicates that a person with that job would ever have to take care of patients, as a Surveyor might if a team deemed it necessary to shut down a facility. As Williams testified at the hearing, the SCO assigns a lower vocational-educational code to Inspector, Health Care Facilities than to Nurse, General Duty; she justified her inclusion of the Nurse, General Duty job description as necessary to capture the professional background as well as the strength requirements for the Surveyor position. Based on our review of the record and the Board's findings, we agree with Vandenberg that substantial evidence does not support the Board's decision that the Inspector, Health Care Facilities job in the Dictionary was sufficient by itself to describe the Surveyor position.

While the Commission applied the substantial evidence standard in this case, underlying both its decision and that of the Board is a legal interpretation of AS 23.30.041(e) and its implementing regulations as prohibiting consideration of

physical and vocational factors when selecting job titles. We do not read these authorities so narrowly.

The Board's regulations require a rehabilitation specialist to gather information about both the "tasks" and the "duties" of a job before consulting the relevant edition of the SCO to select an appropriate job description.[27] A *task* is defined in the dictionary as "[a] piece of work assigned or carried out as part of one's duties."[28] Here, a reason Vandenberg could no longer work as a Health Facilities Surveyor was her inability to perform the task of carrying confidential materials; she needed to perform this task as part of her job duty of performing "on-site inspections and reviews of health care facilities." By focusing solely on the duties of the Surveyor job in discerning the most appropriate job description, the Board effectively excluded from consideration a factor that is mandatory under its regulation.

After the rehabilitation specialist obtains the necessary information about both tasks and duties, the regulation instructs the specialist to use the correct edition of the SCO to "select the most appropriate job title or titles that describe the jobs held and training received."[29] The SCO classifies jobs using a number of different factors, one of which is strength and one of which encompasses education and vocational training.[30] Requiring use of the SCO to identify job descriptions permits a rehabilitation specialist to take into account the strength demands of a worker's job when deciding which

---

[27]   8 AAC 45.525(b).

[28]   WEBSTER'S II NEW COLLEGE DICTIONARY 1156 (3d ed. 2005).

[29]   8 AAC 45.525(b)(2).

[30]   *See supra* note 11; SCO, *supra* note 5, B-1 to C-4 (discussing SVP and physical-demands classifications used in SCO). *See also Morgan*, 938 P.2d at 1055 (setting out different factors used in SCO to describe physical demands of jobs).

position is "most appropriate" because strength is an important physical factor used to classify jobs in that reference's matrix. Similarly, vocational preparation is a factor the SCO uses to classify positions, so in deciding which positions best match the jobs held by the employee, a rehabilitation specialist could justify her selection in part based on this factor.

We disagree with the Commission's decision that educational or professional requirements should only be considered if "a licensing requirement has a physical demands component." Education is a component of the vocational-preparation categorization in the SCO and consequently of the classification of job titles there; on a practical level, a nursing job cannot be filled by someone without the required education or professional training. Additionally, AS 23.30.041(e) and the Board's regulations interpreting the statute both mandate inclusion of jobs for which an employee has received training, not just jobs an employee has actually held.[31] If training prompts inclusion of a job description in the possible jobs the applicant is qualified for, it is difficult to understand the Board's interpretation of the statute as limiting consideration of professional training to the length of time the applicant has held a job. We conclude that neither the statute nor its implementing regulations prohibit a rehabilitation specialist from considering education or vocational requirements or physical-strength classifications when selecting the most appropriate job title or titles from the SCO.

## V. CONCLUSION

For the foregoing reasons, we REVERSE the Commission's decision and REMAND for further proceedings consistent with this opinion.

---

[31] AS 23.30.041(e) (requiring consideration of "other jobs . . . that the employee has held or received training for within 10 years before the injury"); 8 AAC 45.525(b)(2) (mandating that a rehabilitation specialist "select the most appropriate job title or titles that describe the jobs held and training received").